No. 23-15234

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

PAUL A. ISAACSON, M.D., et al.,

*Plaintiffs-Appellants*,

v.

KRISTIN K. MAYES, ATTORNEY GENERAL OF
ARIZONA, IN HER OFFICIAL CAPACITY, et al.

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of
Arizona No. 2:21-cv-01417 (Honorable Douglas L. Rayes)

_____

**BRIEF OF AMICI CURIAE CONSTITUTIONAL AND FEDERAL
COURTS SCHOLARS IN SUPPORT OF APPELLANTS**

_____

Amanda Shafer Berman
April N. Ross
Mara Lieber
Elizabeth C. Riegel
Kaylah Alexander
Halie E. Kaplan
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004
202-688-3451
aberman@crowell.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................... ii

INTERESTS OF AMICI ...................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................... 3

BACKGROUND .............................................................. 6

    I.    The Reason Scheme. ............................................... 6

    II.    The District Court's Erroneous Decision. ............................ 7

ARGUMENT ................................................................ 10

    I.    The Article III injury-in-fact requirement does not require plaintiffs to await prosecution before challenging an unconstitutionally vague law. ...................... 10

    II.    The district court erred in holding that these Plaintiffs lack an Article III injury-in-fact. .......................................... 13

        A.    Plaintiffs satisfy the Article III injury-in-fact requirement because they have had to curtail their medical practices to avoid imminent prosecution under the Reason Scheme. ...................... 13

        B.    A plaintiff bringing a constitutional due process claim satisfies the first *Driehaus* factor ...................... 15

        C.    The district court wrongly relied on out-of-circuit precedent to impose an additional requirement on plaintiffs bringing pre-enforcement vagueness claims ........................................................ 19

CONCLUSION ............................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Yellen,*
34 F.4th 841 (9th Cir. 2022) ........................................................ 15, 16

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) .......................................................... 10, 11, 12, 18

*Baker v. Carr,*
369 U.S. 186 (1962) .............................................................................. 11

*Bankshot Billiards, Inc. v. City of Ocala,*
634 F.3d 1340 (11th Cir. 2011) ........................... 5, 9, 19, 20, 21, 22, 23

*Connally v. General Const. Co.,*
269 U.S. 385 (1926) .............................................................................. 17

*Dobbs v. Jackson Women's Health Organization,*
142 S. Ct. 2228 (2022) ...................................................................... 8, 9

*Hill v. Colorado,*
530 U.S. 703 (2000) .............................................................................. 17

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ............................................................................ 11, 18

*Johnson v. United States,*
576 U.S. 591 (2015) .............................................................................. 17

*Knife Rights, Inc. v. Vance,*
802 F.3d 377 (2d Cir. 2015) ........................................ 15, 16, 17, 22, 23

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...................................................... 3, 11, 12, 13, 14

*McDonald v. Lawson,*
No. 8:22-cv-01805, 2022 WL 18145254
(C.D. Cal Dec. 28, 2022) ...................................................................... 22

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ...................................................... 4, 5, 18

*Ry. Mail Ass'n v. Corsi,*
    326 U.S. 88 (1945) ............................................................ 10

*Sessions v. Dimaya,*
    138 S. Ct. 1204 (2018) ................................................ 17, 25

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ........................................................... 18

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............... 3, 4, 10, 11, 12, 14, 15, 16, 17, 22, 23, 26

*Valle del Sol Inc. v. Whiting,*
    732 F.3d 1006 (9th Cir. 2013) ................................. 12, 14, 19, 22

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ............................................. 20, 21, 23, 24

*Virginia v. Am. Booksellers Ass'n,*
    484 U.S. 383 (1988) ........................................................... 18

*Warth v. Seldin,*
    422 U.S. 490 (1975) ....................................... 10, 14, 16, 26

**Statutes**

A.R.S. §§ 13-301, 13-303 ....................................................... 7

A.R.S. § 13-702 ...................................................................... 6

A.R.S. § 13-3603.02 ............................................................. 6, 7

A.R.S. §§ 32-1401 .................................................................. 7

A.R.S. § 36-2157 ................................................................... 6, 7

A.R.S. § 36-2158 .................................................................... 6

A.R.S. § 36-2161 .................................................................... 6

## Other Authorities

Anthony G. Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67, 75 (1960) ................................................................................. 25

Daniel B. Rice, *Reforming Variable Vagueness*, 23 U. Pa. J. Const. L. 960 (2021) ........................................................ 1

Joel S. Johnson, *Vagueness and Federal-State Relations*, 90 U. Chi. L. Rev. (forthcoming 2023)................................ 25

Peter W. Low & Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2059 (2015) ............. 25

## INTERESTS OF AMICI[1]

Amici curiae Constitutional and Federal Courts Scholars are law professors who teach and publish scholarship addressing constitutional rights and access to the federal courts to vindicate those rights. The proper application of the injury-in-fact requirement for Article III standing, as well as the core due process principle that persons may access the courts to challenge a vague statute before they face arbitrary enforcement under that statute, are thus of great import to them.

Amicus curiae Daniel B. Rice is an Assistant Professor at the University of Arkansas School of Law, where his research focuses on constitutional law, including the proper mechanisms of vagueness review. *See* Daniel B. Rice, *Reforming Variable Vagueness*, 23 U. Pa. J. Const. L. 960 (2021).

Amicus curiae Erwin Chemerinsky is the Dean and Jesse H. Choper Distinguished Professor of Law at the University of California at Berkeley School of Law. Dean Chemerinsky is a prominent expert on

---

[1] Counsel for all parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part; no party or counsel for a party contributed money intended to fund preparing or submitting this brief; and no person other than amici and their counsel contributed money intended to fund preparing or submitting this brief.

constitutional law and civil liberties and the author of sixteen books, including casebooks and treatises about constitutional law.

Amicus curiae Michael C. Dorf is the Robert S. Stevens Professor of Law at Cornell Law School. He has authored or co-authored over one hundred scholarly articles and essays for law reviews, books, and peer-reviewed science and social science journals. He is also a co-editor of the Choper, *et al.*, Constitutional Law casebook.

Amicus curiae Daniel Farber is the Sho Sato Professor of Law at the University of California, Berkeley, and the Faculty Director of the Center for Law, Energy, and the Environment. He teaches and researches in fields including constitutional law, environmental law, administrative law, torts, energy law, and disaster law.

Amicus curiae Joanna L. Grossman is the Ellen K. Solender Endowed Chair in Women and the Law at the Southern Methodist University Dedman School of Law. Professor Grossman writes extensively on sex discrimination and workplace equality.

Amicus curiae Martha Minow is the 300th Anniversary University Professor at Harvard University and former dean of Harvard Law School, where she has taught civil procedure, constitutional law, family

law, international criminal justice, jurisprudence, law and education, and the public law workshop, among other courses. She has authored or edited 20 books and many articles and essays addressing constitutional or procedural legal issues.

Amici urge the Court to clarify that litigants bringing pre-enforcement vagueness challenges need not demonstrate that their conduct is constitutionally protected to pursue their claims that a vague statute deprives them of fair notice, violating the Due Process Clause.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The district court's decision exposes regulated parties to an ongoing threat of severe criminal, civil, and licensure penalties, with no opportunity to seek pre-enforcement review. The court's conclusion that Plaintiffs lack an Article III injury-in-fact to bring their void-for-vagueness challenge is contrary to fundamental standing and due process principles, as well as Supreme Court and Circuit precedent.

Article III's injury-in-fact requirement, set forth by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and applied in the context of pre-enforcement challenges in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), requires only that

litigants have a personal stake in a case. It does *not* require plaintiffs to "bet the farm, so to speak, by taking the violative action" in order to challenge an unconstitutionally vague law. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). But the district court's decision does exactly that: it forces regulated persons to choose between ceasing their conduct or facing prosecution, with the corresponding risk of imprisonment, fines, and loss of their livelihoods.

The district court's holding that Plaintiffs do not meet the Article III injury-in-fact requirement and lack standing to bring a pre-enforcement vagueness challenge to Arizona's "Reason Scheme" rests on clear legal error. The void-for-vagueness doctrine is a core component of constitutional due process, serving two important purposes: ensuring that persons facing loss of life, liberty, or property through state action have fair notice of what conduct is proscribed, and avoiding the arbitrary enforcement of laws. Because it protects these due process rights, a pre-enforcement vagueness challenge implicates conduct that is "affected with a constitutional interest." *Driehaus*, 573 U.S. at 160.

The district court, however, imposed an additional requirement on plaintiffs asserting pre-enforcement vagueness claims. It held that

Plaintiffs' claim is barred because they cannot show that the Reason Scheme chills the exercise of an *additional and separate* constitutional right: one that is either "expressly protected by the Constitution" or protected "as an element of substantive due process." 1-ER-8. That requirement has no basis in the Constitution or governing precedent. Rather, the district court relied on one wrongly decided out-of-circuit decision, *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340 (11th Cir. 2011), that is at odds with fundamental standing and due process principles, Supreme Court precedent, and the approach of most courts.

The district court's erroneous decision not only has forced Plaintiffs and other Arizona medical professionals to curtail the care they provide to patients in an attempt to comply with Arizona's Reason Scheme, but its reasoning would broadly deprive many persons regulated by vague laws of the opportunity to challenge those laws without first "bet[ting] the farm" by violating them. *MedImmune*, 549 U.S. at 129. This Court should correct that error by reversing, holding that Plaintiffs have an Article III injury-in-fact, and thereby allowing Plaintiffs' pre-enforcement claims to proceed to the merits.

# BACKGROUND

A comprehensive description of the Reason Scheme and the decision below is set forth in Plaintiffs' brief. Amici focus on the aspects of the statute and decision below most relevant to their arguments.

## I.    The Reason Scheme.

The Reason Scheme, A.R.S. §§ 13-3603.02(A)(2), (B)(2), (D), (E), 36-2157(A)(1), 36-2158(A)(2)(d), 36-2161(A)(25), was enacted on April 27, 2021. Plaintiffs allege that the Reason Scheme is vague and inconsistent in describing the conduct it bars. Under the Reason Scheme, if a person "knowingly . . . [s]olicits or accepts monies to finance . . . an abortion because of a genetic abnormality" of the fetus or embryo they are guilty of a class 3 felony punishable by two to 8.75 years imprisonment. A.R.S. § 13-3603.02(B)(2); A.R.S. § 13-702(D). The Reason Scheme also states that any person who "[p]erforms an abortion knowing that the abortion is sought solely because of a genetic abnormality" is subject to a class 6 felony punishable by four months to two years imprisonment. A.R.S. § 13-3603.02(A)(2); A.R.S. § 13-702(D). Additionally, abortion care may not be provided unless the provider executes an affidavit swearing "no knowledge that the" pregnancy is

being terminated "because of a genetic abnormality" of the fetus or embryo. A.R.S. § 36-2157.

The Reason Scheme also imposes liability on any "physician, physician's assistant, nurse, counselor or other medical or mental health professional who knowingly does not report known violations [of the Reason Scheme] to appropriate law enforcement authorities." A.R.S. § 13-3603.02(E). Plaintiffs allege that referring patients for or providing information about abortion care could give rise to liability for aiding or facilitating another person in obtaining a prohibited abortion, *see* A.R.S. §§ 13-301, 13-303, even though the statute fails to clearly and consistently define when an abortion is prohibited.

In addition to facing imprisonment, those who violate the Reason Scheme risk suspension or revocation of a medical license, public censure, and penalties of at least $1,000 and up to $10,000 for each violation found. A.R.S. §§ 32-1401(27); 32-1403(A)(2), (A)(5); 32-1403.01(A); 32-1451(A), (D)-(E), (I), and (K).

## II.    The District Court's Erroneous Decision.

After it was enacted, Plaintiffs (individual physicians, the largest physicians' associations in Arizona, and two constitutional rights

7

advocacy organizations) sought to preliminarily enjoin the Reason Scheme as unconstitutionally vague. The district court initially granted a preliminary injunction because the Scheme's vague, "squishy" terms and reliance on physicians' "knowledge" of "the subjective motivations of another individual" fail to adequately notify Plaintiffs of what activity is proscribed and expose them to arbitrary criminal prosecutions. 2-ER-169–71. The district court concluded that the challenged law, and the risk of arbitrary enforcement, would "chill[]" providers in Arizona "from performing abortions whenever they have information from which they might infer that a fetal genetic abnormality is *a reason* why a patient is seeking to terminate a pregnancy." 2-ER-179 (emphasis added). In short, providers would be forced to over-comply to avoid arbitrary enforcement given the inconsistencies in the statutory text.

After the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), the question of whether a preliminary injunction was warranted was back before the district court. *Dobbs* did not undermine the court's stated reasoning in its initial grant of injunctive relief: that the Reason Scheme's text is

unconstitutionally vague. But on January 19, 2023, the district court denied Plaintiffs' Renewed Motion for Preliminary Injunction, concluding that Plaintiffs could not demonstrate a concrete and imminent injury to support federal jurisdiction under Article III because, after the Supreme Court's decision in *Dobbs*, the underlying conduct (performing abortions) is no longer constitutionally protected. 1-ER-7-13. To reach this conclusion, the district court relied on an out-of-circuit decision, *Bankshot Billiards,* to hold that Plaintiffs lacked an injury-in-fact because their intended conduct was not "arguably affected with a constitutional interest." 1-ER-13. The court therefore refused to reach the merits of "the Reason [Scheme's] legality." 1-ER-13.

The district court's holding that a plaintiff lacks an injury-in-fact sufficient to bring a pre-enforcement vagueness claim unless the challenged law chills the exercise of a *separate* constitutional right cannot be squared with fundamental standing and due process principles, or Supreme Court and Circuit precedent.

# ARGUMENT

## I. The Article III injury-in-fact requirement does not require plaintiffs to await prosecution before challenging an unconstitutionally vague law.

The district court's application of the Article III injury-in-fact requirement to bar Plaintiffs from bringing a pre-enforcement vagueness challenge to the Reason Scheme is contrary to the foundational principles underlying that requirement.

The "basic inquiry" of Article III's "injury-in-fact" requirement is "whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). A plaintiff must have suffered, or imminently face, an injury-in-fact such that the plaintiff has a "personal stake in the outcome of the controversy." *Driehaus*, 573 U.S. at 158 (quotation and citation omitted); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (the Article III injury-in-fact requirement requires the court to evaluate whether the plaintiff has "'alleged such a personal stake in the outcome of the controversy' as to warrant his

10

invocation of federal-court jurisdiction") (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). In a challenge to a government action or inaction, the injury-in-fact inquiry "depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561–62.

A long line of Supreme Court and Ninth Circuit case law confirms that plaintiffs subject to government prosecution under an allegedly unlawful statute have an injury-in-fact, and thus Article III standing, to challenge that law *before* they are actually prosecuted. *See Babbitt*, 442 U.S. at 302 (finding standing where Plaintiff had "fear of criminal prosecution" that was "not imaginary or wholly speculative" even though the penalty had "not yet been applied and may never be applied"); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) (finding that plaintiffs faced "a credible threat of prosecution" and "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief") (quoting *Babbitt*, 442 U.S. at 298); *Driehaus*, 573 U.S. at 158 ("When an individual is subject to such a

threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) ("It is well-established that, although a plaintiff 'must demonstrate a realistic danger of sustaining a direct injury as a result of a statute's operation or enforcement,' a plaintiff 'does not have to await the consummation of threatened injury to obtain preventive relief.'") (quoting *Babbitt*, 442 U.S. at 298). That is consistent with the Supreme Court's admonition in *Lujan* that there is "ordinarily little question" that a plaintiff who is the "object of the government action or inaction" has suffered an Article III injury-in-fact and has standing to seek a "judgment preventing . . . the action." 504 U.S. at 561–62.

Plaintiffs, who are the direct targets of Arizona's Reason Scheme and have felt it necessary to curtail their medical practices to avoid arbitrary enforcement thereunder (and the concomitant risk of imprisonment, fines, and loss of their medical licenses), unquestionably have a sufficiently "personal stake" in the outcome of this controversy and therefore an Article III injury-in-fact. *Driehaus*, 573 U.S. at 158. The district court's contrary conclusion was legal error.

## II.   The district court erred in holding that these Plaintiffs lack an Article III injury-in-fact.

The district court's holding that Plaintiffs cannot bring a pre-enforcement vagueness challenge because their own conduct is not constitutionally protected cannot be reconciled with the standing principles discussed above; the void-for-vagueness doctrine and the constitutional due process guarantees it protects; or existing precedent. Rather, under Supreme Court precedent—and under the approach taken by this Circuit and other courts considering pre-enforcement vagueness claims—there is no requirement that a vague law implicate a *separate* constitutional right beyond the right to due process. The threat of prosecution under an assertedly vague law itself is a constitutional due process injury-in-fact giving rise to Article III standing.

### A.   Plaintiffs satisfy the Article III injury-in-fact requirement because they have had to curtail their medical practices to avoid imminent prosecution under the Reason Scheme.

Plaintiffs here are unquestionably the "object of the government action or inaction," *see Lujan*, 504 U.S. at 561–62, and (as described in their brief) have had to curtail their medical practices to avoid a credible, imminent threat of prosecution under the Reason Scheme.

13

That alone gives Plaintiffs an undeniable personal stake in the outcome of this case, sufficient to establish an injury-in-fact. *See Warth*, 422 U.S. at 500. That injury is "actual" and "imminent"—not "conjectural" or "hypothetical"—given that the Reason Scheme is now in effect. *Lujan*, 504 U.S. at 560–61. This is thus not a close case. A straightforward application of the traditional standing analysis leads to one conclusion: Plaintiffs satisfy the Article III injury-in-fact requirement.

Plaintiffs need not also show that their own conduct is constitutionally protected simply because they seek to pursue a pre-enforcement void-for-vagueness claim. Rather, the Supreme Court has explained that, in the pre-enforcement context, the threat of enforcement creates a sufficiently imminent injury to satisfy Article III where (1) Plaintiffs intend to engage in a course of conduct "arguably affected with a constitutional interest," (2) the conduct is arguably proscribed by a statute, and (3) there exists a credible threat of prosecution thereunder. *Driehaus*, 573 U.S. at 160. Even where actual enforcement has not yet occurred, the real and imminent threat of prosecution under an assertedly vague statute is enough to establish an Article III injury-in-fact. *See Valle del Sol Inc.*, 732 F.3d at 1015

14

(plaintiff who faced a credible threat of prosecution under a statute claimed to be unconstitutionally vague satisfied Article III's injury-in-fact requirement); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384–87 (2d Cir. 2015) (plaintiffs who demonstrated credible threat of prosecution under a state law criminalizing possession of certain types of knives had standing to bring pre-enforcement vagueness claim).

Plaintiffs' brief amply demonstrates that they face a credible threat of prosecution if they were to resume the conduct they engaged in before the Reason Scheme went into effect. Under *Driehaus*, that risk of lost liberty or property is sufficient for Plaintiffs to bring their constitutional due process vagueness claim.

## B. A plaintiff bringing a constitutional due process claim satisfies the first *Driehaus* factor.

Contrary to the district court's decision, the first *Driehaus* factor (an intention to engage in a course of conduct "arguably affected with a constitutional interest") does not require a plaintiff to allege that the *underlying conduct at issue* is itself constitutionally protected. *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) (quotation and citation omitted). Rather, as this Court has explained, allegations that a statute "is unconstitutionally ambiguous and coercive" are themselves sufficient

15

to establish a constitutional interest giving rise to a viable pre-enforcement claim. *See id.* (accepting plaintiff's allegation that the statute at issue was "unconstitutionally ambiguous and coercive" for standing purposes, and thus finding that the first *Driehaus* factor was satisfied); *Knife Rights, Inc.*, 802 F.3d at 384 n.4 (the due process interest in having notice of conduct curtailed by criminal statutes constitutes a "constitutional interest").

The injury-in-fact requirement articulated in *Driehaus* also should not be confused with the merits of the constitutional claim asserted, nor is it dependent on the court's assessment of the plaintiff's likelihood of success on the merits. While the first *Driehaus* factor "to a degree resembles an invitation to reach the merits" of Plaintiff's constitutional claims, standing "in no way depends on the merits." *Yellen*, 34 F.4th at 849 (quoting *Warth*, 422 U.S. at 500). Thus, the requirement that conduct be "arguably affected with a constitutional interest" does *not* mean that the court must find the plaintiff's own conduct to be constitutionally protected in order for the claim to proceed to the merits. Rather, a plaintiff may meet that requirement by alleging that *the challenged law* deprives her of some constitutional right. *See Yellen*, 34

F.4th at 849 (plaintiff's allegations that a statutory condition was unconstitutionally ambiguous satisfied the first *Driehaus* factor); *Knife Rights, Inc.*, 802 F.3d at 384 n.4. Plaintiffs plainly satisfy this requirement by alleging that the Reason Scheme violates their constitutional due process rights by forcing them to comply, at risk of arbitrary prosecution, with an impossibly vague statute.

Indeed, the void-for-vagueness doctrine lies at the very core of the basic due process rights guaranteed by the Constitution. As Justice Gorsuch observed in *Sessions v. Dimaya*, that doctrine "serves as a faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under our Constitution." 138 S. Ct. 1204, 1224 (2018) (Gorsuch, J. concurring in part). A law that "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement," *Hill v. Colorado*, 530 U.S. 703, 732 (2000), thereby "violates the first essential of due process." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (quoting *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926)).

17

Because these basic due process principles lie at the heart of our constitutional order, a plaintiff is not required to "first expose himself to actual arrest or prosecution to be entitled to challenge" a vague statute. *See Babbitt*, 442 U.S. at 298 (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)); *MedImmune*, 549 U.S. at 128–29 (holding that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"—for example, the constitutionality of a law threatened to be enforced). Rather, the Supreme Court has regularly affirmed that individuals have Article III standing to bring pre-enforcement vagueness challenges. *E.g.*, *Babbitt*, 442 U.S. at 298 (standing requirements met where plaintiffs brought pre-enforcement claim challenging various aspects of Arizona's farm labor statute as unconstitutionally vague); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988) (plaintiff booksellers had standing to challenge statute barring display of inappropriate material harmful to juveniles as overbroad and vague); *Humanitarian Law Project*, 561 U.S. at 15–16 (finding standing where Plaintiffs challenging statute as vague faced a credible threat of prosecution, explaining they should not be required to

await and undergo a criminal prosecution to seek relief); *Valle del Sol Inc.*, 732 F.3d at 1015 (pastor had standing to bring pre-enforcement challenge where she demonstrated a credible threat of prosecution under a statute that she claimed was vague and unintelligible).

### C. The district court wrongly relied on out-of-circuit precedent to impose an additional requirement on plaintiffs bringing pre-enforcement vagueness claims.

Despite this long line of precedent, the district court found that plaintiffs bringing pre-enforcement vagueness claims must show an additional constitutional interest—beyond the right not to be subject to arbitrary prosecution under vague laws—to establish an Article III injury. To reach that conclusion, the district court relied on an isolated, poorly reasoned out-of-circuit decision, *Bankshot Billiards*, to hold Plaintiffs lack an Article III injury because their professional conduct (providing abortion care) is not constitutionally protected. That erroneous conclusion violates clear precedent from the Supreme Court, this Court, and other Circuits.

In *Bankshot Billiards*, plaintiffs brought a facial vagueness challenge to an ordinance regulating the presence of persons under the age of 21 in establishments where alcohol was consumed. Ignoring the

examples of contrary precedent discussed above, the Eleventh Circuit panel indicated that a plaintiff challenging a vague law before enforcement must show that the law causes "a separate injury"— specifically, being "chilled from engaging in constitutionally protected activity." *Bankshot Billiards*, 634 F.3d at 1350–51. In doing so, the court created a categorical rule that an unconstitutionally vague law cannot be challenged pre-enforcement unless the plaintiff's activity is itself constitutionally protected. In other words, some *additional* constitutional interest must be shown (beyond the due process interest in freedom from vague laws and arbitrary prosecution) before a pre-enforcement vagueness claim can proceed. But the constitutional harm in being governed by a vague law is present both pre-enforcement and post-enforcement, regardless of whether the underlying activity is also constitutionally protected (for example, because it implicates First Amendment rights). The *Bankshot Billiards* court's analysis ignores the core due process interest in not being subject to arbitrary prosecution without fair notice of what the law requires.

To make matters worse, *Bankshot Billiards* flatly contradicts governing Supreme Court precedent. In *Village of Hoffman Estates v.*

20

*Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), the Court reviewed a pre-enforcement challenge to a local ordinance requiring businesses to obtain a license under certain circumstances. The Court expressly found that the ordinance "simply regulates business behavior," rather than inhibiting constitutional rights. *Id.* at 499. Nonetheless, the Court proceeded to the merits of the commercial plaintiff's vagueness claim. *Id.* at 503; *see also id.* at 497 ("A law that does not reach constitutionally protected conduct . . . may nevertheless be challenged on its face as unduly vague, in violation of due process."). Ignoring this analysis, the *Bankshot Billiards* court found that the plaintiffs had not suffered a constitutional injury because their intended conduct was "normal business activity." 634 F.3d at 1350–51. If that holding were correct, *Hoffman Estates* could not have been decided as it was.

The court's analysis in *Bankshot Billiards* to bar a pre-enforcement vagueness challenge on injury-in-fact grounds also conflicts with the precedent of this and other circuits. Courts across the country, including this Court, regularly evaluate standing in pre-enforcement vagueness cases without regard to whether due process is the only constitutional interest at stake.

21

For example, in *Valle de Sol Inc.*, the Ninth Circuit examined a statute making it a criminal offense to transport, harbor, or conceal an unauthorized alien under certain circumstances. 732 F.3d at 1012–13. This Court found an injury-in-fact for standing to bring a pre-enforcement vagueness challenge based on the credible threat of prosecution under an allegedly vague statute, without regard to whether other constitutional rights were implicated. *Id.* at 1013–14. Applying the test set out in *Driehaus*, the Ninth Circuit's standing analysis focused on whether there was a credible threat of prosecution. *Id.* at 1015. The only constitutional interest identified was the vagueness of the statute itself. *See id.* at 1015 & n.5; *see also McDonald v. Lawson*, No. 8:22-cv-01805, 2022 WL 18145254, at *5, *9–15 (C.D. Cal Dec. 28, 2022) (plaintiff had standing to bring pre-enforcement vagueness challenge despite determination that First Amendment and vagueness claims would not be successful on the merits).

The Second Circuit has similarly allowed plaintiffs to bring pre-enforcement vagueness challenges without demonstrating an additional constitutional interest. In *Knife Rights*, decided four years after *Bankshot*, the Second Circuit found standing where plaintiffs

22

demonstrated a credible threat of prosecution under a state law criminalizing possession of certain types of knives. 802 F.3d at 384–87. In examining the *Driehaus* factors, the *Knife Rights* court explicitly stated: "The Supreme Court has not limited standing to pursue pre-enforcement challenges only to plaintiffs intending conduct arguably affected with a constitutional interest." *Id.* at 384 n.4. Rather, the plaintiffs' implicated constitutional interest *was* the due process right to have fair notice of the conduct curtailed by the statute at issue. *Id.* ("plaintiffs' intended conduct here is affected by such an interest—specifically, the due process interest in having notice of conduct curtailed by criminal statutes").

The Eleventh Circuit panel's decision in *Bankshot Billiards*, and the district court's reliance on it here, are also at odds with the tiered framework for vagueness review established by the Supreme Court. After explaining that "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment," the *Hoffman Estates* Court specified which level of vagueness scrutiny applies to certain types of laws. 455 U.S. at 498–99. Laws that "threaten[] to inhibit the exercise of constitutionally protected rights"

are reviewed most stringently, whereas economic regulations and laws merely imposing civil penalties are less likely to be found unconstitutionally vague. *Id.* Importantly, this tiered framework for reviewing the *merits* of vagueness claims *presupposes access to pre-enforcement review* even when the specific conduct at issue is not constitutionally protected.

Consider what the district court's contrary approach would mean: pre-enforcement vagueness claims could be brought *only* if the challenged laws were subject to the most stringent form of review. That result makes no sense, particularly given that *Hoffman Estates* itself entertained a pre-enforcement vagueness challenge to a law that "simply regulate[d] business behavior." *Hoffman Estates*, 455 U.S. at 499. Without saying as much, the district court appears to have conflated *Hoffman Estates*'s framework for tiered vagueness review with the Article III injury-in-fact prerequisite for bringing a vagueness claim. That approach would eviscerate the very framework established by the Supreme Court, leaving only the uppermost tier of scrutiny in place for pre-enforcement challenges. Yet again, the district court's approach cannot be squared with binding precedent.

24

The district court's decision also betrays a fundamentally negative view of the constitutional status of the void-for-vagueness doctrine itself. That view questions the legitimacy of the doctrine on the ground that it was developed alongside and, at times, in aid of substantive due process. *See Dimaya*, 138 S. Ct. at 1242–45 (Thomas, J., dissenting). To be sure, the Supreme Court has sometimes "employed the doctrine for instrumental purposes," Joel S. Johnson, *Vagueness and Federal-State Relations*, 90 U. Chi. L. Rev., at *9 (forthcoming 2023), such as creating an "insulating buffer zone of added protection" for certain constitutional freedoms, Anthony G. Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev. 67, 75 (1960). But the void-for-vagueness doctrine cannot be reduced to those uses. *See* Peter W. Low & Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2059 (2015) (observing that the buffer-zone theory does not explain all of the Supreme Court's cases). Yet, by requiring a separate constitutional injury for a pre-enforcement vagueness challenge, the district court's decision does exactly that. This Court should decline to endorse this reduction of the scope and import

of the void-for-vagueness doctrine, which as discussed prior (*supra* at p. 17) protects core due process interests.

There is nothing unique about a pre-enforcement vagueness challenge that justifies grafting onto the Article III injury-in-fact requirement an *additional* demand that a plaintiff's conduct implicate a freestanding constitutional right. Contrary to the district court's suggestion, there are sufficient limiting principles to ensure any pre-enforcement claim is justiciable. Here, as elsewhere, a plaintiff must (a) allege an intent to engage in conduct proscribed by the statute, and (b) face a credible threat of enforcement. *Driehaus*, 573 U.S. at 160. These requirements ensure a plaintiff has a personal stake in the case, the core principle the injury-in-fact doctrine is designed to address. *See Warth*, 422 U.S. at 498. The district court was wrong to require more, and this Court should reverse that decision so that Plaintiffs can obtain judicial review of a statute that threatens them with imprisonment, fines, and loss of their livelihoods.

## CONCLUSION

This Court should overturn the district court's decision holding that Plaintiffs lack an Article III injury-in-fact and allow their pre-enforcement vagueness challenge to the Reason Scheme to proceed.

Date: April 27, 2023                    Respectfully submitted,


                                        */s/ Amanda Shafer Berman*
                                        Amanda S. Berman
                                        April N. Ross
                                        Mara Lieber
                                        Elizabeth C. Riegel
                                        Kaylah Alexander
                                        Halie E. Kaplan
                                        **Crowell & Moring LLP**
                                        1001 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        202-688-3451
                                        aberman@crowell.com

27

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15234

I am the attorney or self-represented party.

**This brief contains** | 4,913 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Amanda Shafer Berman | **Date** | 04/27/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*