No. 23-15234

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

PAUL A. ISAACSON, M.D., ET AL.,
*Plaintiffs-Appellants,*

v.

KRISTIN K. MAYES, ATTORNEY GENERAL OF ARIZONA, IN HER
OFFICIAL CAPACITY, ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Arizona
No. 2:21-cv-01417-DLR

_____

## PLAINTIFFS-APPELLANTS' RESPONSE IN OPPOSITION
## TO MOTION TO PARTICIPATE AS APPELLEES

_____

Jessica Sklarsky
Gail Deady
Catherine Coquillette
Center For Reproductive Rights
199 Water Street
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org

*Counsel for Paul A. Isaacson, M.D.,
National Council of Jewish Women
(Arizona Section), Inc., and Arizona
National Organization for Women*

Jared G. Keenan
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org

*Counsel for Plaintiffs-
Appellants*

[Additional Counsel Below]

Jen Samantha D. Rasay
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 628-0286
jrasay@reprorights.org

Beth Wilkinson
Anastasia Pastan
Anthony Ferrara
Elizabeth Keys
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
aferrara@wilkinsonstekloff.com
ekeys@wilkinsonstekloff.com

Ralia Polechronis
Justin Mungai
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
jmungai@wilkinsonstekloff.com

*Counsel for Paul A. Isaacson, M.D.,
National Council of Jewish Women
(Arizona Section), Inc., and Arizona
National Organization for Women*

Alexa Kolbi-Molinas
Rebecca Chan
Ryan Mendías
Lindsey Kaley
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
lkaley@aclu.org

*Counsel for Eric M. Reuss, M.D.,
M.P.H., and Arizona Medical
Association*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ......................................................................................... 1

RELEVANT PROCEDURAL HISTORY ..................................................... 3

ARGUMENT ................................................................................................ 4

   I.  PROPOSED INTERVENORS DO NOT HAVE A SIGNIFICANT PROTECTABLE INTEREST THAT WOULD BE IMPAIRED BY THE DISPOSITION OF THIS APPEAL. .................................................. 4

     A. Proposed Intervenors Cannot Establish A Significant Protectable Interest In This Appeal. ................................................................ 5

       1. Section 12-1841 governs state court litigation and does not grant Proposed Intervenors a significant protectable interest in this federal appeal.......................................................... 6

       2. Section 12-1841 is distinguishable from the statute at issue in *Berger*. ............................................................... 10

     B. Proposed Intervenors' Putative Interest Would Not Be Impaired By Their Absence From This Appellate Proceeding. ............................. 14

   II.  THIS COURT SHOULD DENY PROPOSED INTERVENORS' ALTERNATIVE REQUEST FOR PERMISSIVE INTERVENTION.......... 17

CONCLUSION ........................................................................................... 19

CERTIFICATE OF SERVICE ................................................................... 22

i

# TABLE OF AUTHORITIES

## Cases

*757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   330 F. Supp. 3d 1153 (D. Ariz. 2016) ................................................7
*Arizona v. Yellen*,
   34 F.4th 841 (9th Cir. 2022) ..........................................................14
*Bates v. Jones*,
   127 F.3d 870 (9th Cir. 1997) ......................................................4, 17
*Berger v. N.C. State Conf. of the NAACP*,
   142 S. Ct. 2191 (2022) ........................................................... *passim*
*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
   54 F.4th 1078 (9th Cir. 2022) .................................................. *passim*
*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
   142 S. Ct. 1002 (2022) ....................................................................4
*Canatella v. California*,
   404 F.3d 1106 (9th Cir. 2005) .......................................................17
*City of Scottsdale v. Stuart*,
   No. 1 CA-CV 20-0693, 2021 WL 4958841 (Ariz. Ct. App. Oct. 26, 2021) ........8
*DeVries v. Arizona*,
   198 P.3d 580 (Ariz. Ct. App. 2008).................................................7
*Miracle v. Hobbs*,
   333 F.R.D. 151 (D. Ariz. 2019) .....................................................14
*Orange County v. Air Cal.*,
   799 F.2d 535 (9th Cir. 1986) ...........................................................2
*Perry v. Proposition 8 Off. Proponents*,
   587 F.3d 947 (9th Cir. 2009) ...........................................................5
*Planned Parenthood Ass'n v. Nelson*,
   327 F. Supp. 1290 (D. Ariz. 1971) ..................................................7
*San Jose Mercury News, Inc. v. U.S. Dist. Ct. – N. Dist. (San Jose)*,
   187 F.3d 1096 (9th Cir. 1999) .......................................................17
*Townley v. Miller*,
   693 F.3d 1041 (9th Cir. 2012) .........................................................5

*United Food & Com. Workers Loc. 99 v. Bennett*,
934 F. Supp. 2d 1167 (D. Ariz. 2013) ................................................8

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ...........................................................16

*Va. House of Delegates v. Bethune-Hill*,
139 S. Ct. 1945 (2019) .....................................................................13

*Vivid Ent., LLC v. Fielding*,
774 F.3d 566 (9th Cir. 2014) ...........................................................15

*Westfield Ins. Co. v. Double AA Builders, Ltd.*,
No. CV-13-00012-PHX-GMS, 2013 WL 4051625 (D. Ariz. Aug. 12, 2013) ......7

## Statutes

A.R.S. § 12-1841 ................................................................... *passim*
A.R.S. § 13-3603.02 ......................................................................3
A.R.S. § 36-2157 ...........................................................................3
A.R.S. § 36-2158 ...........................................................................3
A.R.S. § 36-2161 ...........................................................................3
N.C. Gen. Stat. Ann. § 120-32.6 ................................................13
N.C. Gen. Stat. Ann. § 1-72.2 ............................................. 11, 12
S.B. 1457 § 16, 55th Leg., 1st Reg. Sess. (Ariz. 2021) ............... 2, 10, 18

## Other Authorities

Pet'r's Resp. to Brs. of Amici Curiae, *State ex rel. Brnovich v. Ariz. Bd. of Regents*,
476 P.3d 307 (Ariz. 2020) (No. CV-19-0247-PR), 2020 WL 5746248 ...............8

## Rules

Fed. R. App. P. 29 ........................................................................17
Fed. R. Civ. P. 24 .................................................................. *passim*

**INTRODUCTION**

The motion of Arizona Senate President Warren Petersen and Speaker of the Arizona House of Representatives Ben Toma (together, the "Proposed Intervenors") to intervene as appellees should be denied. As set forth below, Proposed Intervenors lack a significant protectable interest in this appeal, and any putative interest would not be impaired by their absence from this appeal. *See Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022).

First, Proposed Intervenors incorrectly claim to derive a significant protectable interest in this action, as required under Federal Rule of Civil Procedure 24(a)(2), from an Arizona statute establishing state court procedural rules for declaratory judgments, but that statute has no application in federal court. Nor can Proposed Intervenors rely on the Supreme Court's recent decision in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022), because, unlike in *Berger*, the Arizona statute Proposed Intervenors attempt to invoke does not apply in federal court, does not expressly designate Proposed Intervenors as agents of the State of Arizona, and does not empower them to litigate on the State's behalf.

Second, even if Proposed Intervenors had identified a significant protectable interest, their motion would still fail for an additional reason: Proposed Intervenors cannot show that any putative interest would be practically impaired or impeded by the Court's resolution of this interlocutory appeal, which concerns only the threshold

1

question of the sufficiency of Plaintiffs' Article III injuries. Proposed Intervenors have made clear that their *sole* interest is in upholding the constitutionality of the laws Plaintiffs have challenged. But the merits of Plaintiffs' claims, or any defense of the laws' constitutionality, is not before the Court in this appeal. Indeed, even if Plaintiffs prevail in this appeal, that will have no impact on Proposed Intervenors' ability to defend the constitutionality of the challenged statutes before the district court, where they have already been granted intervention.

Finally, Proposed Intervenors do not satisfy the criteria for permissive intervention under Rule 24(b), and the Court should therefore exercise its "broad discretion" and deny their alternative request. *See Orange County v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986). In addition to the reasons set forth above, Proposed Intervenors ignored the explicit procedure for legislative intervention laid out in the very statute they ostensibly seek to defend—a statutory procedure they advocated for and voted into Arizona law. *See* Mot. of Intervenors-Defs. Ariz. Sen. Pres. Petersen & Speaker of the Ariz. House of Reps. Toma to Participate as Appellees on Appeal ("Appellate Intervention Mot.") (Dkt. 27) at 4. That statute specifies that the Arizona Legislature may, "by concurrent resolution," "appoint one or more of its members who sponsored or cosponsored this act in the member's official capacity to intervene as a matter of right in any case in which the constitutionality of this act is challenged." S.B. 1457 § 16, 55th Leg., 1st Reg. Sess. (Ariz. 2021) ("Section 16").

2

There has been no concurrent resolution by the Arizona Legislature appointing either of the Proposed Intervenors, and Proposed Intervenor Speaker Toma is not even eligible for the appointment because he was not a sponsor or cosponsor of the law. Their attempt to skirt this explicit procedure for intervention further counsels in favor of denying Proposed Intervenors' alternative request for permissive intervention under Rule 24(b).

## RELEVANT PROCEDURAL HISTORY

In September 2022, Plaintiffs moved for a preliminary injunction of the Reason Scheme (*i.e.*, A.R.S. §§ 13-3603.02(A)(2), (B)(2), (D), (E), 36-2157(A)(1), 36-2158(A)(2)(d), 36-2161(A)(25)), (together, "the Reason Scheme"), due to its unconstitutional vagueness. ECF No. 125.[1] The Reason Scheme criminalizes the provision of abortion if the provider has some uncertain level of knowledge that a patient's decision is to some uncertain degree motivated by an unclearly defined set of "genetic abnormalities." On January 19, 2023, the district court denied Plaintiffs' Renewed Motion for Preliminary Injunction, erroneously concluding that Plaintiffs could not demonstrate a sufficient injury to support federal jurisdiction under Article III. ECF No. 152. The district court did not reach the merits of Plaintiffs' constitutional challenge to the Reason Scheme.

---

[1] A full recounting of the procedural history of this case is set out in Plaintiffs-Appellants' opening brief. *See* Pls.-Appellants' Br. (Dkt. 25) at 21–25.

On February 3, 2023, Proposed Intervenors filed a motion to intervene in the district court. ECF No. 155. On February 21, 2023, Plaintiffs noticed their appeal of the district court's opinion and moved to stay proceedings during the pendency of the appeal. ECF Nos. 162, 163. The court granted the stay motion on February 22, 2023, except as to the pending intervention motion. ECF No. 164. Shortly thereafter, the court granted Proposed Intervenors' motion for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) on March 8, 2023. ECF No. 167.

## ARGUMENT

### I. PROPOSED INTERVENORS DO NOT HAVE A SIGNIFICANT PROTECTABLE INTEREST THAT WOULD BE IMPAIRED BY THE DISPOSITION OF THIS APPEAL.

"Intervention at the appellate stage is, of course, unusual and should ordinarily be allowed only for imperative reasons." *Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997) (internal quotation marks omitted). While "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," appellate courts are to consider "the policies underlying intervention in the district courts, including the legal 'interest' that a party seeks to 'protect' through intervention on appeal." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1010 (2022) (quoting Fed. R. Civ. P. 24(a)(2)) (internal quotation marks and citation omitted); *see also Bates*, 127 F.3d at 873 ("Intervention on appeal is governed by Rule 24 of the Federal Rules of Civil Procedure.").

Under Rule 24(a)(2), a non-party[2] is entitled to intervene as of right only when it demonstrates that "(1) it has a significant protectable interest as to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately meet the applicant's interest." *Jim Dobbas*, 54 F.4th at 1086. "A putative intervenor has the burden of establishing all four requirements," *id.*, and the "[f]ailure to satisfy any one of the requirements is fatal to the application," *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Here, as set forth below, Proposed Intervenors cannot satisfy either of the first two prongs and, therefore, this Court "need not reach the remaining elements." *Id*.

## A. Proposed Intervenors Cannot Establish A Significant Protectable Interest In This Appeal.

To be a "significant protectable interest," Rule 24(a)(2) requires, at an "irreducible minimum," "that the asserted interest be protectable under some law

---

[2] The filing of the notice of appeal, which occurred before Proposed Intervenors were made parties to the case below, divested the district court of jurisdiction over the preliminary injunction motion and conferred jurisdiction on this Court. *See Townley v. Miller*, 693 F.3d 1041, 1042 (9th Cir. 2012). As Proposed Intervenors implicitly acknowledge by citing the standard for intervention, *see* Appellate Intervention Mot. at 7, they cannot merely be granted "formal approval" of "their status as Appellees" in the appeal of the denial of that preliminary injunction based solely on their intervention below. *Id.* at 1. Rather, they must meet the requirements for intervention under Rule 24.

and that there exist a relationship between the legally protected interest and the claims at issue. If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop." *Jim Dobbas*, 54 F.4th at 1086, 1088 (internal quotation marks and citation omitted). Proposed Intervenors cannot demonstrate such an interest here.

### 1. Section 12-1841 governs state court litigation and does not grant Proposed Intervenors a significant protectable interest in this federal appeal.

Proposed Intervenors claim that A.R.S. § 12-1841 ("Section 12-1841") confers upon them a sufficient legally protected interest in intervening in any constitutional challenge to an Arizona statute, no matter where that challenge is lodged. But this is an incorrect reading of the statute.[3]

Section 12-1841 is located within Arizona's Uniform Declaratory Judgments Act ("UDJA"), a statutory scheme establishing the procedures for obtaining declaratory relief in state court. It requires, *inter alia*, that the Speaker of the House of Representatives and the President of the Senate shall be served with any pleading, motion, or document filed in state court challenging the constitutionality of a state statute, and also provides for their ability to be heard in any such state court proceeding. A.R.S. § 12-1841(A). As Arizona courts have recognized, Section 12-

---

[3] While the district court agreed with Proposed Intervenors' interpretation, ECF No. 167, it is a misreading of the state court procedural rules contained in Section 12-1841 for the reasons set forth below.

1841 is "purely procedural" and merely "relates to the manner and means by which a right to recover is enforced or provides no more than the method by which to proceed." *DeVries v. Arizona*, 198 P.3d 580, 584–85 (Ariz. Ct. App. 2008) (citing *Aranda v. Indus. Comm'n*, 11 P.3d 1006, 1009 (Ariz. 2000)). Federal courts have likewise long recognized that the UDJA prescribes state court procedures. *See, e.g.*, *Planned Parenthood Ass'n v. Nelson*, 327 F. Supp. 1290, 1293 (D. Ariz. 1971) (noting that the UDJA affords litigants a "state remedy"); *Westfield Ins. Co. v. Double AA Builders, Ltd.*, No. CV-13-00012-PHX-GMS, 2013 WL 4051625, at *5 (D. Ariz. Aug. 12, 2013) (same). That the UDJA was explicitly and exclusively intended to govern state court procedure is precisely why a claim brought under it, upon removal to federal court, "must be converted to a claim brought under the" Federal Declaratory Judgment Act. *See 757BD LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 330 F. Supp. 3d 1153, 1159 (D. Ariz. 2016) (internal citation omitted).

Section 12-1841's inapplicability to federal court proceedings is clear from an examination of its other provisions as well. For example, Section 12-1841(C) permits a court to "vacate any finding of unconstitutionality" "on motion by the attorney general, the speaker of the house of representatives or the president of the senate" if "the speaker of the house of representatives and the president of the senate are not served in a timely manner with notice pursuant to" Section 12-1841(A). In

fact, Arizona courts have even held that noncompliance with Section 12-1841 means that a party "has not properly presented a constitutional challenge" and that the court therefore "lacks jurisdiction over [the] attempted constitutional challenge." *City of Scottsdale v. Stuart*, No. 1 CA-CV 20-0693, 2021 WL 4958841, at *2 (Ariz. Ct. App. Oct. 26, 2021). But it goes without saying that Section 12-1841(C) does not empower a non-party to force the automatic vacatur of a federal court ruling for noncompliance with a state procedural rule. And even where federal courts reference Section 12-1841, it is not for the proposition that such procedures are required in federal court, nor do plaintiffs in federal court challenging state statutes as unconstitutional actually file the "notice of claim of unconstitutionality" contemplated by Section 12-1841(B). *See, e.g.*, *United Food & Com. Workers Loc. 99 v. Bennett*, 934 F. Supp. 2d 1167, 1189 (D. Ariz. 2013); *cf.* Pet'r's Resp. to Brs. of Amici Curiae, *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 476 P.3d 307 (Ariz. 2020) (No. CV-19-0247-PR), 2020 WL 5746248, at *25 n.16 (Attorney General characterizing Section 12-1841 as "providing [an] intervention right *in state court*" in briefing before the Arizona Supreme Court (emphasis added)).

Notwithstanding the plain meaning of Section 12-1841 as a whole, Proposed Intervenors misconstrue Section 12-1841's application to "any proceeding" to argue that the section was intended to create a significant protectable interest in federal cases, as well. *See* A.R.S. § 12-1841(A). But assuming Section 12-1841 applies to

8

"any case," Appellate Intervention Mot. at 10, shorn of the statute's proper context, obfuscates its far more limited nature. As explained above, Section 12-1841 only creates procedures applicable to *state* proceedings: who must be made a party when declaratory relief is sought, who must be noticed, the content of the notice, and the repercussions for failure to notify the proper parties. Indeed, the provision in Section 12-1841(A) providing that the Speaker of the House of Representatives and the President of the Senate "shall be entitled to be heard" in "any proceeding" challenging the constitutionality of a state statute follows that same provision's requirement that they be served with copies of the pleadings—a procedural requirement only applicable in state court. Likewise, Section 12-1841(D) provides that Proposed Intervenors "may intervene as a party," but only "in a proceeding that is subject to the notice requirements of this section," which, again, is only state court proceedings. Simply put, Proposed Intervenors cannot cherry-pick the phrase "any proceeding" and isolate it from the exclusively state court procedural requirements contained in Section 12-1841. Accordingly, Proposed Intervenors have not asserted a sufficient "relationship between the legally protected interest" under state court procedural rules and the federal "claims at issue" in this appeal. *Jim Dobbas*, 54 F.4th at 1088 (citation omitted).[4]

---

[4] Notably, while Section 12-1841 does not confer on Proposed Intervenors a significant protectable interest here, as one of the sponsors of S.B. 1457, Senate

**2. Section 12-1841 is distinguishable from the statute at issue in *Berger*.**

Proposed Intervenors' reliance on the Supreme Court's recent decision in *Berger* is misplaced. In *Berger*, the Supreme Court held that two leaders of North Carolina's state legislature established a significant protectable interest for purposes of Rule 24(a) in light of a state statute explicitly delegating them the authority to (i) act as agents of the State (ii) in federal court. 142 S. Ct. at 2202, 2206. Here, the text of Section 12-1841 reveals that it is applicable solely to state court proceedings, but even if that were not the case, Section 12-1841 differs markedly from the statute at issue in *Berger* in several crucial respects.

To start, as discussed *supra*, unlike the statute in *Berger*, Section 12-1841 exclusively governs the process by which Proposed Intervenors may participate as a party in certain state court proceedings. By contrast, the North Carolina statute in *Berger* made explicit that "[i]t is the public policy of the State of North Carolina that *in any action in any federal court* in which the validity or constitutionality of an act

---

President Warren Petersen could have sought intervention pursuant to Section 16 of that statute, which provides that the Arizona Legislature may, "by concurrent resolution," "appoint one or more of its members who sponsored or cosponsored this act in the member's official capacity to intervene as a matter of right in any case in which the constitutionality of this act is challenged." S.B. 1457 § 16. Yet, despite sponsoring, advocating for, and ultimately voting into law an explicit path for asserting a significant protectable interest in the defense of S.B. 1457, President Petersen blatantly ignored it. *See also infra* Part II.

of the General Assembly or a provision of the North Carolina Constitution is challenged," "*a federal court* presiding over any such action . . . is requested to allow . . . the legislative branch . . . of the State of North Carolina to participate in any such action as a party." N.C. Gen. Stat. Ann. § 1-72.2(a) (emphases added). Based on the law's unambiguous directive that the Speaker and the Senate President shall "constitute the State of North Carolina" for the purposes of defending the constitutionality of a state law "in any action *in any federal court*," *id.* (emphasis added), the Supreme Court concluded that North Carolina had expressly permitted the legislative intervenors "to speak for the State in federal court," thereby creating a significant protectable interest for purposes of Rule 24(a). *Berger*, 142 S. Ct. at 2202 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013)). Section 12-1841 contains no analogous provision related to federal court actions, as it only creates procedural rules for state court UDJA actions.

Indeed, even if it did not apply only to state court proceedings, Section 12-1841 does not appear to create any authority for the Proposed Intervenors to act *on behalf of the State* at all, unlike North Carolina's statute. In *Berger*, the Supreme Court made abundantly clear that the "dispositive" consideration in assessing whether the statute at issue created a significant protectable interest for purposes of Rule 24 was that it "empowe[red]" the putative intervenor "to defend [the State's] sovereign interests in federal court." 142 S. Ct. at 2202 (quoting *Cameron*, 142 S.

11

Ct. at 1011). That is, the putative legislative intervenor could show a significant protectable interest because it demonstrated that the State had "designate[d]" it as an "agent[] to represent [the State] in federal court." *Id.* (quoting *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019)). The plain text of the North Carolina statute left little doubt that the legislative intervenors had been so designated, as it explicitly provided that "the public policy of the State of North Carolina" was that, "in any action in any federal court in which the validity or constitutionality" of a state law "is challenged," "the General Assembly, jointly through the Speaker of the House of Representatives and the President Pro Tempore of the Senate" "*constitute the State of North Carolina*," along with the governor. N.C. Gen. Stat. Ann. § 1-72.2(a) (emphasis added).

In stark contrast, Section 12-1841 does not specifically authorize the Speaker and Senate President to act as agents *for* the State. Rather, Section 12-1841 merely provides that the Speaker and Senate President are "entitled to be heard" in a challenge to the constitutionality of any Arizona law. *See* A.R.S. § 12-1841(A); *see also id.* § 12-1841(D) (legislative intervention is entirely discretionary).

Further, while North Carolina law makes state legislative leaders necessary parties in any constitutional attack on a state statute, Section 12-1841 does precisely the opposite; thus, the permissive nature of Section 12-1841 is wholly distinct from the North Carolina statutory scheme that established a significant protectable interest

12

in *Berger*. Under North Carolina law, "the Speaker of the House of Representatives and the President Pro Tempore of the Senate, as agents of the State through the General Assembly" are "*necessary parties*" "[w]henever the validity or constitutionality of an act of the General Assembly or a provision of the Constitution of North Carolina is the subject of an action in any . . . federal court." N.C. Gen. Stat. Ann. § 120-32.6(b) (emphasis added). In Arizona, however, Section 12-1841 "shall not be construed to compel . . . the speaker of the house of representatives or the president of the senate to intervene as a party in any proceeding or to permit them to be named as defendants in a proceeding." A.R.S. § 12-1841(D).[5]

Accordingly, the features of the North Carolina statute in *Berger* that the Supreme Court credited in finding a significant protectable interest for purposes of Rule 24(a) are entirely absent from Section 12-1841. Thus, even if that statute were not limited to state court, *Berger* does not support Proposed Intervenors' assertion that they have a significant protectable interest based on Section 12-1841 in intervening in this appeal.

---

[5] Proposed Intervenors suggest that the rules adopted by their respective legislative bodies also confer upon them a significant protectable interest. *See* Appellate Intervention Mot. at 11. But the rules of a *single house* of a bicameral legislature cannot possibly constitute the *State's* "designat[ion]" of the legislative leaders as "agents to represent it in federal court." *See Berger*, 142 S. Ct. at 2202 (quoting *Bethune-Hill*, 139 S. Ct. at 1951); *cf. Bethune-Hill*, 139 S. Ct. at 1953 ("The Court's precedent thus lends no support for the notion that one House of a bicameral legislature, resting solely on its role in the legislative process, may appeal on its own behalf a judgment invalidating a state enactment.").

**B. Proposed Intervenors' Putative Interest Would Not Be Impaired By Their Absence From This Appellate Proceeding.**

Even if Proposed Intervenors could identify a significant protectable interest for purposes of Rule 24, Proposed Intervenors have failed to demonstrate that the disposition of *this appeal* may, "as a practical matter, impair or impede [their] ability to protect [their] interest." *Jim Dobbas*, 54 F.4th at 1086. "Simply stating that [Section 12-1841] confers upon them the interest in upholding the constitutionality of Arizona laws does not establish that [Proposed Intervenors] are so situated that the disposition of the [appeal] may as a practical matter impair or impede [their] ability to protect that interest." *Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 2019) (internal quotation marks omitted). That is because this appeal does not concern the constitutional validity of the Reason Scheme—an issue that was not reached by the district court below. Instead, Plaintiffs have appealed the district court's erroneous conclusion that they have not suffered a sufficient Article III injury-in-fact. In other words, the appeal concerns a threshold jurisdictional question that is unrelated, as a matter of law, to the underlying subject matter of the statute or the merits of Plaintiffs' constitutional attack on the challenged statutory scheme. *See Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) (noting "the Supreme Court has cautioned that standing in no way depends on the merits" (internal quotation marks omitted)). Moreover, Proposed Intervenors have already been granted intervention

14

in the district court for purposes of future proceedings on the merits.[6] Thus, while Proposed Intervenors may for some reason prefer that this case be litigated as a post-enforcement challenge, Proposed Intervenors' motion nevertheless fails to explain how their putative interest in defending the constitutionality of the underlying abortion ban would actually be impaired or impeded if they do not participate in this appeal.

Indeed, Proposed Intervenors' motion dramatically misrepresents what is at stake in this appeal, asserting that, absent their participation, "[n]o current Defendant will defend *S.B. 1457* on appeal, leaving *the legislation* without any defender on appeal." Appellate Intervention Mot. at 10 (emphasis added). But this appeal does not actually implicate, much less require any defense of, S.B. 1457's constitutionality. Instead, Plaintiffs have challenged the district court's conclusion that they have not suffered an injury-in-fact sufficient to satisfy Article III.[7] Thus,

---

[6] Although the district court's order permitting Proposed Intervenors to intervene in the proceedings below is not appealable until final judgment, *see Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014), Plaintiffs maintain that the district court erred in finding that Proposed Intervenors have a significant protectable interest in intervening in the proceedings below, for the reasons set forth above. *See supra* Part I.A. However, even if this Court disagrees, it still can and should deny Proposed Intervenors' motion here, on the ground that any such interest would not be impaired or impeded by the disposition of this appeal, which would not impact their intervention below.

[7] The jurisdictional nature of the questions presented on appeal also means that the Attorney General's belief as to the constitutionality or unconstitutionality of the

even if Plaintiffs prevail on appeal—indeed, *especially* if Plaintiffs prevail—Proposed Intervenors will still be able to litigate the merits of Plaintiffs' constitutional claims on remand to the district court, where they have *already* been granted intervention. By the same token, the only interests that Proposed Intervenors assert in their motion—*i.e.*, "exercising statutory rights" under Section 12-1841 and "advocating for" certain anti-abortion views, Appellate Intervention Mot. at 1—would not be impeded or impaired if they were denied intervention in this appeal, which does not concern questions specific to the State's interests in prohibiting abortions for certain reasons, or to abortion at all.[8] In short, no matter how the Court ultimately decides the non-merits questions presented on appeal, Proposed Intervenors' "interests are not impaired," especially where they have "other means by which [they] may protect [their] interests" before the district court. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004).

If Proposed Intervenors have any views on the jurisdictional questions presented on appeal, they need not take the "unusual" path of "[i]ntervention at the

---

Reason Scheme is irrelevant in assessing whether or not Proposed Intervenors' purported interest in the law's defense is practically impaired. In any event, the Attorney General has not indicated either way whether she intends to defend the district court's ruling regarding Plaintiffs' Article III injury.

[8] Similarly, while Proposed Intervenors make the conclusory assertion that if they do not participate in this appeal "justice will be substantially undermined," Appellate Intervention Mot. at 17, they fail to explain why this would be.

appellate stage." *Bates*, 127 F.3d at 873. Rather, they can provide the Court with their views on these questions as an amicus under Federal Rule of Appellate Procedure 29.

## II. THIS COURT SHOULD DENY PROPOSED INTERVENORS' ALTERNATIVE REQUEST FOR PERMISSIVE INTERVENTION.

"A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the . . . court." *San Jose Mercury News, Inc. v. U.S. Dist. Ct. – N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999). In the Ninth Circuit, there are "three necessary prerequisites for allowing permissive intervention pursuant to Rule 24(b)(2)," which require an applicant to show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Id.* (internal quotation marks omitted). Proposed Intervenors have not shown they meet the third threshold requirement, because their "anticipated defense," which they state will be "that the challenged laws are constitutional," Appellate Intervention Mot. at 18, has no bearing on this appeal about Plaintiffs' suffered injuries from the Reason Scheme, as described *supra*.

But "[e]ven if an applicant satisfies [the] threshold requirements," a "court has discretion to deny permissive intervention," *see Canatella v. California*, 404 F.3d 1106, 1117 (9th Cir. 2005) (second alteration in original) (internal quotation marks omitted), which this Court should do here. In addition to the reasons set forth

above, to grant permissive intervention in this case would sanction an end run around the specific mechanism the Arizona Legislature created for authorizing certain members to intervene on its behalf in defense of the very law at issue in this case.

As the Supreme Court recognized in *Berger*, "federal courts should rarely question" and should respect "a State's chosen means of diffusing its sovereign powers among various branches and officials." 142 S. Ct. at 2201. Here, the Legislature considered, debated, and passed Section 16 of S.B. 1457, which allows the Legislature to authorize intervention to defend S.B. 1457 by passing a concurrent resolution appointing either a sponsor or cosponsor of the bill to intervene. This process not only designates which specific members may intervene in defense of the Reason Scheme but gives the entirety of the Arizona Legislature the opportunity to consider whether that intervention should be authorized.

Because Proposed Intervenors failed to follow the procedure set forth in Section 16, we do not know whether the Senate President, who actually cosponsored S.B. 1457, would have been appointed by the Legislature to intervene in defense of S.B. 1457's constitutionality, nor is there any guarantee that the Legislature would have deemed intervention appropriate at all. And, notably, the Speaker would not even have been eligible for the appointment because he was not a sponsor or cosponsor of the law. *See* S.B. 1457 § 16. Allowing Proposed Intervenors to permissively intervene would remove the intervention decision from the hands of *all*

of the people's elected representatives and "evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials." *Berger*, 142 S. Ct. at 2201. The Court should therefore refuse Proposed Intervenors' invitation to skirt state law and the democratic process and should deny their alternative request for permissive intervention.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court deny Proposed Intervenors' motion to intervene.

Date: May 1, 2023

Respectfully submitted,

*/s/ Jessica Sklarsky*

Jared G. Keenan
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org

*Counsel for Plaintiffs-Appellants*

Alexa Kolbi-Molinas
Rebecca Chan
Ryan Mendías
Lindsey Kaley
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
lkaley@aclu.org

*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

Jessica Sklarsky
Gail Deady
Catherine Coquillette
Center For Reproductive Rights
199 Water Street
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org

Jen Samantha D. Rasay
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 628-0286
jrasay@reprorights.org

Ralia Polechronis
Justin Mungai
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
jmungai@wilkinsonstekloff.com

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

ADDITIONAL COUNSEL ON NEXT PAGE

20

Beth Wilkinson
Anastasia Pastan
Anthony Ferrara
Elizabeth Keys
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
aferrara@wilkinsonstekloff.com
ekeys@wilkinsonstekloff.com

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the appellate CM/ECF system. I further certify that counsel for all parties are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*/s/ Jessica Sklarsky*
Jessica Sklarsky