APPEAL NO. 23-15234

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PAUL A. ISAACSON, M.D., *et al.*,

*Plaintiffs-Appellants,*

v.

KRISTIN K. MAYES, in her official capacity as Arizona Attorney General; *et al.*,

*Defendants-Appellees,*

and

MICHAEL B. WHITING, County Attorney for Apache County, in his official capacity, *et al.*,

*Defendants,*

and

WARREN PETERSEN, Arizona Senate President, and BEN TOMA, Speaker of the Arizona House of Representatives,

*Intervenors-Defendants/Proposed Appellees.*

On Appeal from the United States District Court
for the District of Arizona
Case No. 2:21-cv-01417-DLR / Hon. Douglas L. Rayes

## PROVISIONAL ANSWER BRIEF OF INTERVENORS-DEFENDANTS/PROPOSED APPELLEES ARIZONA SENATE PRESIDENT PETERSEN AND SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES TOMA

DENISE M. HARLE
GA Bar No. 176758
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100

KEVIN H. THERIOT
AZ Bar No. 030446
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260

Lawrenceville, GA 30043
(770) 339-0774
dharle@ADFlegal.org

(480) 444-0020
ktheriot@ADFlegal.org

ERIN M. HAWLEY
DC Bar No. 500782
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
ehawley@adflegal.org

*Counsel for Intervenors-Defendants / Proposed Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF ISSUES ........................................................................ 1

STATEMENT OF THE CASE .................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................... 4

STANDARD OF REVIEW ......................................................................... 6

ARGUMENT .............................................................................................. 6

The district court correctly concluded that Plaintiffs lack standing
to bring a pre-enforcement challenge to S.B. 1457 .................................. 6

    A.    Plaintiffs have failed to show that they have suffered
            an actual and imminent injury-in-fact. ................................ 7

            1.    Plaintiffs have not brought a claim that is
                  affected with a constitutional interest .......................... 8

            2.    Plaintiffs have failed to show that they plan to
                  take actions that violate the Reason Regulations. ...... 13

            3.    Plaintiffs have failed to show that there is a
                  credible threat that they will be prosecuted if
                  they violated the Reason Regulations. ........................ 14

    B.    Plaintiffs have failed to establish the second and third
            elements of standing. ........................................................ 16

CONCLUSION .......................................................................................... 16

STATEMENT OF RELATED CASES ...................................................... 18

RULE 8 CERTIFICATE OF COMPLIANCE ......................................... 19

CERTIFICATE OF SERVICE ................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright,*
468 U.S. 737 (1984) ................................................................ 7

*Bankshot Billiards, Inc. v. City of Ocala,*
634 F.3d 1340 (11th Cir. 2011) ......................................... 8, 9

*Cetacean Community v. Bush,*
386 F.3d 1169 (9th Cir. 2004) ............................................. 6

*Dent v. West Virginia,*
129 U.S. 114 (1889) ............................................................. 9

*Dobbs v. Jackson Women's Health Organization,*
142 S. Ct. 2228 (2022) ............................................... 3, 9, 10

*Hawker v. People of New York,*
170 U.S. 189 (1898) ........................................................... 10

*Isaacson v. Mayes,*
2023 WL 315259 (D. Ariz. 2023) ......................................... 1

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ................................................... 7, 11, 16

*SisterSong Women of Color Reproductive Justice Collective v.*
*Governor of Georgia,*
40 F.4th 1320 (11th Cir. 2022) ........................................ 9, 12

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ..................................................... 7, 8, 9

*Thomas v. Anchorage Equal Rights Commission,*
220 F.3d 1134 (9th Cir. 2000) ........................................... 13

*Tingley v. Ferguson,*
47 F.4th 1055 (9th Cir. 2022) ............................... 9, 10, 14, 16

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) ................................................................. 8

**Statutes**

A.R.S. § 13-3603.02 ................................................... 1, 2, 12

A.R.S. § 36-2151 ................................................................... 2

Senate Bill 1457, 55th Leg., 1st Reg. Sess. (Ariz. 2021) ........... 1, 2, 3, 12

**Other Authorities**

Arizona Attorney General, *Arizona Agency Handbook* (2018),
https://bit.ly/3Wf37FW ....................................................... 15

Associated Press, *U.S. Supreme Court: Arizona Can Enforce Genetic
Issue Abortion Ban*, KTAR NEWS (June 30, 2022),
http://bit.ly/3RvhRy5 ....................................................... 4, 15

Jonathan J. Cooper, *After Narrow Election, Democrat Katie Hobbs
Sworn in as Arizona Governor*, PBS (Jan. 2, 2023),
http://bit.ly/3Hywtbn .......................................................... 3

Kris Mayes, *12 Point Plan*, https://bit.ly/3DEiEHf ................................ 15

## STATEMENT OF ISSUES

1.    Whether Plaintiffs have failed to establish pre-enforcement standing when they have failed to identify a constitutional basis for their purported injury, they do not have plans to violate Senate Bill 1457 (S.B. 1457), and there is no likelihood that they will violate S.B. 1457.

2.    Whether S.B. 1457, which has clear provisions that even Plaintiffs know how to apply, is clear enough to establish that there is at least one circumstance in which it is applicable.

## STATEMENT OF THE CASE

### Senate Bill § 1457

Since 2011, Arizona has protected the most vulnerable members of society from race- and sex-based discrimination by prohibiting any person from "perform[ing] an abortion knowing that the abortion is sought based on the sex or race of the child or the race of a parent of that child." A.R.S. § 13-3603.02(A)(1).

In 2021, Arizona extended the Reason Regulations' safeguards by promulgating S.B. 1457 to "protect[] the disability community from discriminatory abortions, including for example Down-syndrome-selective abortions."[1] Senate Bill 1457 § 15, 55th Leg., 1st Reg. Sess. (Ariz. 2021) ("S.B. 1457"). The law prohibits any person from

---

[1] The provisions of S.B. 1457 are known as the "Reason Regulations" because they provide guidelines related to a woman's reason for seeking an abortion. *Isaacson v. Mayes*, 2023 WL 315259, at *1 (D. Ariz. 2023).

1

"perform[ing] an abortion knowing that the abortion is sought solely because of a genetic abnormality of that child." S.B. 1457 § 2. "Genetic abnormality" is defined as "the presence or presumed presence of an abnormal gene expression in an unborn child, including a chromosomal disorder or morphological malformation occurring as the result of abnormal gene expression." A.R.S. § 13-3603.02(G)(2).

The Reason Regulations contain two exceptions. First, a "[g]enetic abnormality . . . [d]oes not include a lethal fetal condition." *Id*. Second, a "medical emergency" exception allows abortions necessary, in "the physician's good faith clinical judgment," to prevent the death or "substantial and irreversible impairment of a major bodily function" of the pregnant woman. A.R.S. § 13-3603.02(A), (G)(3); § 36-2151(6). Moreover, the Act exempts from all criminal or civil liability the mother who aborts her child because of the child's genetic abnormality. A.R.S. § 13-3603.02(F).

In passing the law, Arizona found that "prohibiting persons from performing abortions knowing that the abortion is sought because of a genetic abnormality of the child advances at least three compelling state interests." S.B. 1457 § 15. The statute: (1) "protects the disability community from discriminatory abortions," (2) protects Arizona citizens from coercive medical practices "that encourage selective abortions of persons with genetic abnormalities," and (3) "protects the integrity and

ethics of the medical profession by preventing doctors from becoming witting participants in genetic-abnormality-selective abortion." *Id.*

## Procedural Posture at the District Court

On January 19, 2023, the district court denied Plaintiffs' motion to preliminarily enjoin the Reason Regulations. 1-ER-3–14. Plaintiffs had argued, pursuant to the First and Fourteenth Amendments, that the Reason Regulations were unconstitutionally vague. 2-ER-114–139. The district court rejected the claim, concluding that Plaintiffs had failed to establish that they had suffered an injury-in-fact for the purposes of pre-enforcement standing. 1-ER-13. In particular, the court held that the conduct Plaintiffs claimed they were chilled from engaging in was not constitutionally protected in light of *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), and the speech Plaintiffs claimed they were self-censoring was not proscribed by the Reason Regulations. 1-ER-13. Plaintiffs filed an interlocutory appeal of the court's order denying a preliminary injunction, 3-ER-302–306, and moved the district court to stay the case pending the outcome of this appeal, ECF No. 163.

## The Attorney General's Position on S.B. 1457

Kris Mayes was sworn in as the Arizona Attorney General on January 2, 2023.[2] Attorney General Mayes has publicly expressed her

---

[2] Jonathan J. Cooper, *After Narrow Election, Democrat Katie Hobbs Sworn in as Arizona Governor*, PBS (Jan. 2, 2023), http://bit.ly/3Hywtbn.

belief that the Reason Regulations are "unconstitutional" and "violate Arizona's privacy clause,"[3] which is consistent with her refusal to defend the law in this litigation.[4] Attorney General Mayes has promised not to prosecute doctors and other medical professionals who perform abortions in violation of Arizona law, and vowed to use her supervisory authority to prevent county attorneys from prosecuting illegal abortions.[5] And Attorney General Mayes has refused to appeal the Arizona Court of Appeals' ruling invalidating Arizona's pre-Roe pro-life law.[6]

## SUMMARY OF THE ARGUMENT

Plaintiffs say they are constitutionally entitled—as medical professionals—to end the life of an unborn child when asked to do so solely because the baby has a genetic condition.

Plaintiffs lack standing because they have not suffered an injury-in-fact. To establish injury in the pre-enforcement context, Plaintiffs are first required to show that the claim is affected by a constitutional

---

[3] Associated Press, *U.S. Supreme Court: Arizona Can Enforce Genetic Issue Abortion Ban*, KTAR NEWS (June 30, 2022), http://bit.ly/3RvhRy5.

[4] *See* 2-ER-20–21; Defendants' Notice of No Position on Appeal, ECF No. 43.

[5] Kris Mayes, *12 Point Plan*, https://bit.ly/3DEiEHf; *see* Ariz. Agency Handbook, Ch. One at 1.3.7 (2018) (citing A.R.S. § 41–193(A)(4)(4)–(5)).

[6] Greg Hahne, *Arizona Attorney General Kris Mayes Will Not Challenge Appellate Ruling on Territorial Abortion Law*, KJZZ (Jan. 3, 2023), https://bit.ly/40u4ORO.

interest. But *Dobbs* spelled the end of abortion as an independent constitutional due process right—and even under the now-overturned *Roe v. Wade* decision, it was a due process right only of pregnant women, not doctors.

Further, Plaintiffs' standalone due process claim, which they base on a right to life, liberty, and property, does not articulate a concrete and particularized injury that is actual or imminent. They merely claim to suffer from vague "compliance costs" (all of which are speech-based), stemming from their fearful "over-compliance" with the Reason Regulations, which contain no prohibitions on speech. Plaintiffs neither establish the constitutional basis for their claim, nor do they show how it causes an imminent, concrete harm. They have therefore failed to meet the first prong of pre-enforcement standing.

The second requirement is Plaintiffs must show they plan to take actions to violate the Reason Regulations. But the only action they threaten to take is counseling mothers who might want to abort unborn babies with a genetic abnormality. This is not conduct that the Reason Regulations prohibit. As for the third requirement for pre-enforcement standing, Plaintiffs cannot establish that they are likely to be prosecuted if they violate the Reason Regulations. To the contrary, the attorney general has vowed that she will not enforce the statute, and she will prevent county prosecutors from doing so.

For all these reasons, this Court should affirm the district court's finding that Plaintiffs failed to establish standing for the purposes of their pre-enforcement challenge to the Reason Regulations.

## STANDARD OF REVIEW

This Court reviews de novo a district court's conclusion that a plaintiff does not have Article III standing. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004).

## ARGUMENT

### The district court correctly concluded that Plaintiffs lack standing to bring a pre-enforcement challenge to S.B. 1457.

Plaintiffs are abortion providers grasping for a constitutional basis to abort unborn children because of their disabilities, but they have no standing to bring their challenge. Post-*Dobbs*, abortion laws are treated like any other health-and-safety regulations: they are permissible if supported by any rational basis advancing a state interest. And Plaintiffs' standalone due process claim—based on an opaque allegation of being forced to "over-comply" with the Reason Regulations—fails for lack of an injury that is concrete, particularized, actual, and imminent. Even if Plaintiffs refuse to abide by the provisions of S.B. 1457, they face no genuine threat of imminent enforcement, because the state's chief law enforcement officer has vowed not to prosecute.

Article III of the U.S. Constitution only authorizes federal courts to hear "cases" and "controversies." Standing is a key component of the

Article III case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish constitutional standing, plaintiffs must demonstrate three elements: (1) injury-in-fact—the plaintiff must allege "concrete and particularized" and "actual or imminent" harm to a legally protected interest, *id.* at 560–61, (2) causal connection—the injury must be "fairly traceable" to the challenged law, *Allen v. Wright*, 468 U.S. 737, 751 (1984); and (3) redressability—a favorable decision must be "likely" to redress the injury-in-fact, *Lujan*, 504 U.S. at 560–61. As the district court correctly concluded, Plaintiffs cannot establish injury-in-fact to support standing in their pre-enforcement challenge.

### A. Plaintiffs have failed to show that they have suffered an actual and imminent injury-in-fact.

In the context of pre-enforcement challenges, a plaintiff may establish that he is in imminent danger of suffering a concrete harm by showing that he (1) intends to engage in conduct that is "arguably affected with a constitutional interest," (2) the conduct is barred by a statute, and (3) there is a "credible threat of prosecution." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (cleaned up). Plaintiffs have failed on all three prongs of the inquiry.

### 1. Plaintiffs have not brought a claim that is affected with a constitutional interest.

Plaintiffs argue that the requirement of an underlying constitutional injury "fails to account for the *constitutional* due process violations that vague laws inflict, even in the absence of an enforcement action, and regardless of whether they govern constitutionally protected conduct." Appellants' Br. at 56, ECF No. 25. Their attempt to generate an injury-in-fact, despite the absence of a constitutional basis for their claim, is meritless.

While the district court acknowledged that this Court "cautions against reaching the merits of constitutional claims when determining whether" a claim is affected by a constitutional interest, it reasoned that it had to "examine to some degree whether Plaintiffs' conduct is constitutionally protected, otherwise this factor would serve no purpose." 1-ER-9 (citing *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022)). The district court's reasoning makes sense, because otherwise, any professional engaged in a normal business activity could bring an Article III "case" or "controversy" solely by virtue of the fact that a regulation may be vague—even if no other constitutional right is implicated. *See* 1-ER-6–7, 13 (citing *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011)); (*Driehaus*, 573 U.S. at 158–66); *cf. Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) (stating that "the most important factor affecting the clarity that the

Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.").

Contrary to Plaintiffs' argument, the district court's reliance on *Bankshot* was consistent with its reliance on *Driehaus*. *See* Appellants' Br. at 54–60; *see also* 1-ER-6–7, 13. In both cases, the plaintiffs were required to establish that a constitutional interest was implicated by the complaint. *Compare Driehaus*, 573 U.S. at 158–66 (requiring the plaintiff's claim to be affected by a constitutional interest and finding it where the plaintiff's speech-based conduct implicated the First Amendment) *with Bankshot*, 634 F.3d at 1350 (finding no constitutional injury where a pool hall owner's business-related claim did not implicate a constitutional interest). This Court should therefore consider whether—at a bare minimum—Plaintiffs can connect their abortion-based claim to a constitutional right.

Abortion no longer invokes a constitutional interest, because there is no constitutional right to obtain an abortion, much less perform one. *See Dobbs*, 142 S. Ct. at 2242. Now, federal courts "must treat parties in cases concerning abortion the same as parties in any other context," *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1328 (11th Cir. 2022); and "[f]ew professions require more careful" examination than "that of medicine," *Tingley v. Ferguson*, 47 F.4th 1055, 1082 (9th Cir. 2022) (cleaned up); *see also, e.g., Dent v. West Virginia*, 129 U.S. 114, 122 (1889) (upholding the state's right to enforce

9

medical licensing requirements); *Hawker v. People of New York*, 170 U.S. 189, 191 (1898) (upholding the state's right to determine whether an individual has "sufficient good character" to practice medicine).

As the district court explained, "*Dobbs* eliminated the right to elective abortion[,]" and a state may therefore "ban the procedure to serve such interests as 'respect for and preservation of prenatal life at all stages of development,' 'the preservation and integrity of the medical profession,' and 'the prevention of discrimination on the basis of race, sex, or disability.'" 1-ER-10 (quoting *Dobbs*, 142 S. Ct. at 2284). And the district court correctly reasoned that, because "'there is no right to practice medicine which is not subordinate to the police power of the states' . . . [w]ithout the constitutional protections of *Roe* and *Casey* provided, the chilling effect [S.B. 1475] [has] on doctors performing elective abortions is not the type of injury that can sustain a pre-enforcement [challenge]." *Id.* (quoting *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011)) (citing cases).

Accordingly, like the statute at issue in *Dobbs*, the Reason Regulations are "reasonable 'health and welfare' laws" that do not implicate any constitutional right to obtain—much less perform—abortions. *See Tingley*, 47 F.4th at 1082 (quoting *Dobbs*, 142 S. Ct. at 2284). They are simply state regulations governing licensed healthcare professionals, which "not only fall within the tradition of state regulation

of the health profession, but they also affect the health of children—a vulnerable group in the eyes of the law." *Id.* at 1083 (cleaned up).

In addition to Plaintiffs' inability to bring a constitutionally affected abortion-based challenge, their standalone due process claim, which they base on a right to "life, liberty, and property," Appellants' Br. at 37–40, does not articulate a "concrete and particularized" and "actual or imminent" harm. *Lujan*, 504 U.S. at 560. They merely claim to suffer from opaque monetary "compliance costs" that come with having to provide services under the burden of the Reason Regulations. Appellants' Br. at 30–36. They say that in the past, they offered "fetal screening that revealed the likelihood of or testing that led to a diagnosis of a fetal condition"; "non-directive counseling and refer[ring] those who chose" to abort their unborn child for whatever reason; and collaboration with professionals, such as genetic counselors, who help patients decide whether to abort their children. Appellants' Br. at 31–35. Now, they argue, the Reason Regulations have injured them by forcing them to "over-comply" with an abortion-based medical regulation. Appellants' Brief at 2.

"Over-compliance," according to Plaintiffs, means being unable "to offer as much care to patients with suspected or known fetal conditions as is legally permissible" under the Reason Regulations. Appellants' Br. at 44. As far as specifics on this "over-compliance," Plaintiffs say they no longer offer abortion care "whenever there is even the slightest indication

11

of a fetal condition," even if this was a significant part a doctor's practice previously. Appellants' Br. at 33; *see also* Appellants' Br. at 20, 42–43. They also claim to be hampered from offering "full-spectrum, non-directive options counseling" and are forced to refuse referrals from genetic counselors. Appellants' Br. at 20, 31–33, 42–43, 50–51. This approach to compliance with the regulations is Plaintiffs' prerogative, but it does not match the plain language of the statute, which merely prohibits abortion for the "sole[]" reason of the "presence or presumed presence of an abnormal gene expression." S.B. 1457 § 2; A.R.S. § 13-3603.02(G)(2). The statute does not say "slightest indication," nor does it cover all "fetal condition[s]." Appellants' Br. at 33. Their injury of over-compliance is self-inflicted.

Plaintiffs' "over-compliance" with the Reason Regulations is not a cognizable injury for the purposes of a due process claim—it is evidence that the regulations are clear enough for Plaintiffs to follow. And it is unclear how due process plays a role in these routine, speech-based decisions to keep in compliance. This is especially true considering that the statute neither mandates nor prohibits providing fetal screening, providing counseling to patients, or collaborating with other healthcare professionals.

A right to due process does not shield Plaintiffs from having to comply with professional regulations such as S.B. 1457. *See SisterSong*, 40 F.4th at 1325–26. Plaintiffs have neither established a constitutional

basis for their claim nor shown how it presents an imminent, concrete harm. That is, their claim is not ripe. *See also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (the need for a concrete and imminent injury "coincides squarely" with the injury-in-fact prong of the standing test). They have therefore failed to meet the first prong of the pre-enforcement standing requirement.

### 2. Plaintiffs have failed to show that they plan to take actions that violate the Reason Regulations.

On the second element of pre-enforcement standing, Plaintiffs have no plans to take actions that are barred by the Reason Regulations. Indeed, they say they want to continue providing "as much [] care as is legally permissible" under the statute. Appellants' Br. at 46. But, according to Plaintiffs, their ability to provide verbal consultations is hampered by the purported vagueness of the statute, forcing them into an opaque injury of "over-compliance"—that is, self-censoring. Appellants' Br. at 27, 30–31, 34; *see also* Appellants' Br. at 19–21. But as the district court held, "Nothing in [S.B. 1457] penalizes Plaintiffs for their counseling or related speech . . . . To the extent Plaintiffs are self-censoring their communications with patients, that self-censorship is not attributable to an actual and well-founded fear that the [statute] forbid[s] such speech." 1-ER-11.

Unless Plaintiffs intend to abort unborn children knowingly for the sole reason of a genetic abnormality, they have no intention of breaking

the law. They have never alleged such an intent. They have therefore failed to meet the second prong of the pre-enforcement standing requirement.

### 3. Plaintiffs have failed to show that there is a credible threat that they will be prosecuted if they violate the Reason Regulations.

With respect to the third element of pre-enforcement standing, Plaintiffs do not show that there is a credible threat of prosecution. The facts show that prosecution is unlikely.

This Court relies on a three-factor test to determine whether a threat of enforcement is legitimate enough to satisfy the requirements for an Article III injury: (1) the plaintiff must have "'concrete plan' to violate the law, (2) . . . the enforcement authorities [must] have 'communicated a specific warning or threat to initiate proceedings,' and (3) . . . there is a 'history of past prosecution or enforcement.'" *Tingley*, 47 F.4th at 1067.

As noted above, Plaintiffs do not have a plan—concrete or otherwise—to violate the law. They simply invoke their right to advise their clients. But the statute does not prohibit speech. Moreover, the state's chief law enforcement officer has vowed that she will not enforce S.B. 1457, and she will prevent county attorneys from enforcing the

statute. [7] And third, Plaintiffs cite to no history of prosecution or enforcement of the statute.

Plaintiffs purportedly live in fear of what *might* happen "if [they] were to cease over-complying with [S.B. 1457]" and what *might then* happen if they subsequently tried "to decipher and offer as much care as is legally permissible under [S.B. 1457]." Appellants' Br. at 36. And Plaintiffs' hypothetical does not end there. They ponder what *might* happen if the current attorney general is not reelected in 2026 and a different, unidentified future attorney general decides to prosecute abortion providers who violate the law. Appellants' Br. at 49. This is not a credible threat of prosecution; it is an invented parade of horribles that have no basis in fact. Plaintiffs fail to establish the third prong of the standing requirement for a pre-enforcement challenge.

\*   \*   \*

Plaintiffs fail to establish standing to bring their pre-enforcement challenge against the Reason Regulations. Their claim does not affect a constitutional interest. Post-*Dobbs*, no abortion-related right is implicated. Plaintiffs' due process claim is defective as well, because they propose nothing more than the "injury" of self-censorship stemming from

---

[7] Kris Mayes, *12 Point Plan*, https://bit.ly/3DEiEHf; *see* Ariz. Att'y Gen., *Ariz. Agency Handbook*, Ch. 1 at 1.3.7 (2018), https://bit.ly/3Wf37FW (citing A.R.S. § 41–193(A)(4)(4)–(5); Associated Press, *U.S. Supreme Court: Arizona Can Enforce Genetic Issue Abortion Ban*, KTAR NEWS (June 30, 2022), http://bit.ly/3RvhRy5.

"over-compliance" with a statute that does not prohibit speech. What's more, the attorney general has vowed that she will not prosecute them even if they knowingly abort unborn children with genetic abnormalities in direct violation of the law. On all three elements of the pre-enforcement injury-in-fact analysis, Plaintiffs fail, and therefore cannot establish the injury necessary to satisfy the first element of standing. *See Lujan*, 504 U.S. at 560; *Tingley*, 47 F.4th at 1067.

### B. Plaintiffs have failed to establish the second and third elements of standing.

Although the district court did not directly address the second requirement for pre-enforcement standing (causation), it did find that Plaintiffs could not satisfy the third prong ("likelihood of success"), because they had failed to demonstrate a cognizable injury. 1-ER-13. Plaintiffs concede that if they cannot establish an injury-in-fact, they cannot establish the two remaining elements. *See* Appellants' Br. at 30–31 n.5. We agree. And in light of the fact that Plaintiffs fail to establish standing on all three prongs of the standing test, the district court correctly denied their pre-enforcement vagueness challenge.

## CONCLUSION

The district court correctly held that Plaintiffs lack pre-enforcement standing.

Respectfully submitted this 18th day of May, 2023.

> *s/Kevin H. Theriot*
> KEVIN H. THERIOT
> AZ Bar No. 030446
> ALLIANCE DEFENDING FREEDOM
> 15100 N. 90th Street
> Scottsdale, AZ 85260
> (480) 444-0020
> (480) 444-0028 facsimile
> ktheriot@ADFlegal.org
>
> DENISE M. HARLE
> GA Bar No. 176758
> ALLIANCE DEFENDING FREEDOM
> 1000 Hurricane Shoals Rd. NE
> Suite D-1100
> Lawrenceville, GA 30043
> (770) 339-0774
> dharle@ADFlegal.org
>
> ERIN M. HAWLEY
> DC Bar No. 500782
> ALLIANCE DEFENDING FREEDOM
> 440 First Street NW, Suite 600
> Washington, DC 20001
> (202) 393-8690
> ehawley@adflegal.org
>
> *Attorneys for Intervenors-*
> *Defendants/Proposed Appellees*
> *President Petersen and Speaker*
> *Toma*

17

**STATEMENT OF RELATED CASES**

Pursuant to Ninth Circuit Rule 28-2.6, counsel for Intervenors-Defendants / Proposed Appellees state that they know of no related case pending in this Court beyond the cross-appeal stemming from the district court's firm preliminary injunction order, Nos. 21-16645 and 21-16711.

*s/Kevin H. Theriot*
Kevin H. Theriot

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15234

I am the attorney or self-represented party.

**This brief contains** | 3,567 | **words, including** | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated | |.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Kevin H. Theriot | **Date** | May 18, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, I electronically filed the foregoing Provisions Answer of Intervenors-Defendants / Proposed Appellees Arizona Senate President Petersen and Speaker of the Arizona House of Representatives Toma with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.


*s/Kevin H. Theriot*
Kevin H. Theriot

Dated: May 18, 2023.