**No. 23-15234**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

PAUL A. ISAACSON, M.D., ET AL.,
*Plaintiffs-Appellants,*

v.

KRISTIN K. MAYES, ATTORNEY GENERAL OF ARIZONA, IN HER OFFICIAL CAPACITY, ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Arizona
No. 2:21-cv-01417-DLR

---

# PLAINTIFFS-APPELLANTS' REPLY BRIEF

---

Jessica Sklarsky
Gail Deady
Catherine Coquillette
Center For Reproductive Rights
199 Water Street
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Jared G. Keenan
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org

*Counsel for Plaintiffs-Appellants*

[Additional Counsel Below]

Jen Samantha D. Rasay
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 628-0286
jrasay@reprorights.org

Beth Wilkinson
Anastasia Pastan
Anthony Ferrara
Elizabeth Keys
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
aferrara@wilkinsonstekloff.com
ekeys@wilkinsonstekloff.com

Ralia Polechronis
Justin Mungai
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
jmungai@wilkinsonstekloff.com

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Alexa Kolbi-Molinas
Rebecca Chan
Ryan Mendías
Lindsey Kaley
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
lkaley@aclu.org

*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 2

I. PLAINTIFF-PHYSICIANS' "ACTUAL" AND ONGOING OVER-COMPLIANCE COSTS ARE COGNIZABLE ARTICLE III INJURIES-IN-FACT. .......... 2

A. Plaintiff-Physicians' Over-Compliance Injuries Are Attributable to the Reason Scheme, Not "Self-Inflicted." .......... 3

B. Plaintiff-Physicians' Over-Compliance Injuries Are Concrete. .......... 5

II. THE THREAT OF ENFORCEMENT TO PLAINTIFF-PHYSICIANS IS AN "IMMINENT" FUTURE INJURY THAT SATISFIES ARTICLE III UNDER *DRIEHAUS*. .......... 7

A. Plaintiff-Physicians' Intended Conduct Is "Arguably Affected with a Constitutional Interest" Consistent with the Vagueness Doctrine and Binding Precedent. .......... 8

B. Plaintiffs' Intended Conduct to Provide Care to Patients with Suspected or Known Fetal Conditions Is "Arguably . . . Proscribed by the Statute." .......... 13

C. Legislative Intervenors' Arguments Regarding "Credible Threat of Enforcement" Similarly Lack Merit. .......... 15

III. PLAINTIFF-PHYSICIANS SATISFY BOTH THE CAUSATION AND REDRESSABILITY ELEMENTS OF STANDING. .......... 19

CONCLUSION .......... 20

CERTIFICATE OF COMPLIANCE .......... 23

CERTIFICATE OF SERVICE .......... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022) .... 12, 18

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) .... 13

*Baggett v. Bullitt*,
377 U.S. 360 (1964) .... 4, 12, 17

*Bankshot Billiards, Inc. v. City of Ocala*,
634 F.3d 1340 (11th Cir. 2011) .... 11

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017) .... 2

*Grand Rivers Enters. Six Nations, Ltd. v. Boughton*,
988 F.3d 114 (2d Cir. 2021) .... 6

*Hill v. Colorado*,
530 U.S. 703 (2000) .... 9

*Knife Rts., Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015) .... 9, 11, 12

*Lake Carriers' Ass'n v. MacMullan*,
406 U.S. 498 (1972) .... 2, 5

*LSO, Ltd. v. Stroh*,
205 F.3d 1146 (9th Cir. 2000) .... 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .... 19

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .... 12, 18

*Nat'l Audubon Soc'y, Inc. v. Davis*,
307 F.3d 835 (9th Cir. 2002) .... 6, 7

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) .... 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........5

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).......... *passim*

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000)..........1

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022).......... 15, 18, 20

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013).......... 9, 12, 16, 17

*Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982)..........9, 10

*Warth v. Seldin*,
422 U.S. 490 (1975).......... 11, 20

*Wolfson v. Brammer*,
616 F.3d 1045 (9th Cir. 2010)..........18

**Statutes**

A.R.S. § 13-107..........17

A.R.S. § 13-3603.02..........17

A.R.S. § 36-2158..........17

A.R.S. § 41-193..........17

**Other Authorities**

Kris Mayes, *12 Point Plan*, https://bit.ly/3DEiEHf..........17

**Constitutional Provisions**

Ariz. Const. art. V, § 1..........17

## INTRODUCTION AND SUMMARY OF ARGUMENT

Legislative Intervenors' response casts no doubt on Plaintiff-Physicians' Article III injuries stemming from the Reason Scheme. Plaintiff-Physicians suffer both "actual" and ongoing coerced over-compliance costs, as well as the "imminent" threat of prosecution under the Reason Scheme were they to cease this over-compliance and provide care that they are currently coerced into withholding.

*First*, Legislative Intervenors do not (because they cannot) seriously dispute that coerced compliance costs satisfy Article III's injury-in-fact requirement. Instead, they misrepresent the Reason Scheme's language and the uncontroverted facts of this case to argue that Plaintiff-Physicians' over-compliance is "self-inflicted" and only "speech-based." However, the text of the Reason Scheme and Plaintiff-Physicians' uncontroverted declarations easily dispel these contentions.[1]

*Second*, Legislative Intervenors' assertion that the threat of enforcement to Plaintiff-Physicians under the Reason Scheme fails the standard for imminence is likewise flawed. Legislative Intervenors not only ask this Court to jettison the vagueness doctrine and disregard binding precedent, they also double down on Legislative Intervenors' inaccurate characterization of the challenged law and

[1] Because the Article III injury-in-fact inquiry "coincides squarely" with the constitutional component of the ripeness inquiry, Plaintiffs' vagueness challenge against the Reason Scheme is also clearly ripe. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

uncontroverted facts. Properly considered, Plaintiffs meet each of the three elements of the *Driehaus* standard for pre-enforcement review. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

*Finally*, Legislative Intervenors' strained attempt to argue that Plaintiffs fail to meet the remaining two elements for standing, causation and redressability, not only restates their prior misrepresentations regarding the Reason Scheme's statutory language and the uncontroverted facts but also misunderstands the meaning of the redressability element.

In short, nothing in Legislative Intervenors' response raises any question about the justiciability of Plaintiff-Physicians' vagueness challenge to the Reason Scheme.

## ARGUMENT

### I. PLAINTIFF-PHYSICIANS' "ACTUAL" AND ONGOING OVER-COMPLIANCE COSTS ARE COGNIZABLE ARTICLE III INJURIES-IN-FACT.

Legislative Intervenors cannot and do not dispute that coerced compliance costs, including financial losses, constitute a clearly cognizable injury under Article III. *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 508 (1972); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017); *see also* Opening Br. at 30–36. Instead, they attempt to cast aside Plaintiff-Physicians' costs by characterizing them as "self-inflicted" and as only "speech-based" and "opaque." Intervenors' Br. at 6,

11–12. Legislative Intervenors' characterizations, however, do not hold water: they are based on a misrepresentation of the Reason Scheme's unclear terms. When viewed in their totality, it is clear that the Reason Scheme's terms—not Plaintiff-Physicians— have forced Plaintiff-Physicians to not only comply, but over-comply, as the only means to limit the potential for prosecution—resulting in concrete financial losses.

### A. Plaintiff-Physicians' Over-Compliance Injuries Are Attributable to the Reason Scheme, Not "Self-Inflicted."

Legislative Intervenors claim that Plaintiff-Physicians' over-compliance is their own "prerogative" because "the plain language of the statute . . . merely prohibits abortion for the 'sole[]' reason of the 'presence or presumed presence of an abnormal gene expression.'" Intervenors' Br. at 12. Legislative Intervenors' interpretation of the Scheme, however, is entirely divorced from the statute's language.

As Plaintiffs explained in their opening brief, the Reason Scheme employs multiple motivational standards, at varying times indicating that the Scheme's prohibitions are triggered if the patient seeks care "solely because of," "because of," or even if there is *any* indication that a patient is seeking care "because of" a "genetic abnormality." *See* Opening Br. at 16–17. As such, it is not at all clear that the Reason Scheme's prohibitions are only triggered when a "genetic abnormality" is the "sole" reason a patient seeks abortion care. The district court itself recognized in its first

preliminary injunction order that the interpretation advocated by Legislative Intervenors is untenable given that "the word solely" appears in only one provision of the Scheme. 2-ER-170.

Legislative Intervenors further ignore that the Reason Scheme fails to make clear: (1) what fetal conditions are included within its definition of "genetic abnormality"; (2) how physicians are to assess a patient's subjective motivations for seeking abortion care; (3) what level of knowledge a physician must possess about a patient's prohibited motivation to trigger the Scheme; and (4) what circumstantial evidence could ultimately be used to prove the physician possessed this unclear level of knowledge. *See* Opening Br. at 14–19.

Given this uncertainty created by the Scheme's nebulous terms, Plaintiff-Physicians have been forced, indeed coerced, to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).[2] It is undisputed that Plaintiff-Physicians have severely curtailed the abortion care they previously offered to patients with

[2] Because Legislative Intervenors admit that compliance with the Reason Scheme requires Plaintiff-Physicians to turn away patients whose "sole" reason for seeking care is the "presence or presumed presence of an abnormal gene expression," Intervenors' Br. at 12, they admit that Plaintiff-Physicians have an Article III injury. Plaintiff-Physicians previously treated such patients and now—because of the Reason Scheme—are forced to turn them away. 2-ER-251–55; 2-ER-231, 233. Legislative Intervenors do not even attempt to suggest that these compliance costs are "self-inflicted" or offer any reason why they do not satisfy Article III's injury-in-fact requirement.

suspected or known fetal conditions (including care that may still be legal under the Reason Scheme) for fear of prosecution under the Scheme. *See* Opening Br. at 19–21. These coerced over-compliance costs are quintessential actual and ongoing Article III injuries. *See, e.g.*, *MacMullan*, 406 U.S. at 508 (holding that compliance that is "coerced by the threat of enforcement" creates a controversy that "is both immediate and real").

**B. Plaintiff-Physicians' Over-Compliance Injuries Are Concrete.**

Legislative Intervenors further attempt to obfuscate the clearly cognizable coerced over-compliance costs by variably characterizing them as only "speech-based" and "opaque." Intervenors' Br. at 5, 11–13. While true that Plaintiff-Physicians' declarations identify various ways the Reason Scheme has hampered their communications with and counseling of patients, harming the provider-patient relationship,[3] *see* Opening Br. at 19–21, 31–34, Plaintiff-Physicians also suffer clear concrete financial costs associated with over-compliance with the Reason Scheme's vague terms.

As Drs. Isaacson's and Reuss's declarations make clear, they are paid for providing abortion services, 2-ER-251; 2-ER-223, and they have been forced to

[3] Although unnecessary to Plaintiff-Physicians' standing here, these more intangible harms from compliance can be sufficiently concrete to constitute Article III injuries. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("[W]e have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.").

cease offering abortion care that they provided before the Reason Scheme went into effect, *see* 2-ER-251–55; 2-ER-231–33. Dr. Reuss no longer provides abortion care to patients whenever a fetal condition "at a minimum . . . factors into their decision" to terminate a pregnancy. 2-ER-144. "[G]iven the confusing and inconsistent language in the law," this is the only way for Dr. Reuss to avoid "even a circumstantial indication that [he] may be violating the Reason Scheme" and to "avoid criminal consequences." *Id.* Similarly, Dr. Isaacson has ceased providing abortion care to patients with likely or confirmed fetal conditions, even though this was a significant part of his practice previously. 2-ER-152–53.

The Reason Scheme's vagueness, therefore, has had concrete impacts on Plaintiff-Physicians' activities and livelihoods. Plaintiff-Physicians are no longer treating patients that they previously would have cared for, with attendant loss of income. *See, e.g.*, *Grand Rivers Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 121 (2d Cir. 2021) (collecting cases) ("A regulated entity may plead an 'injury in fact' by plausibly alleging compliance costs associated with an increased regulatory burden."); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855–56 (9th Cir. 2002) (finding Article III injury where plaintiffs "suffered actual, discrete, and direct injury in fact in the form of financial losses incurred from the prohibition"). These

monetary costs are a direct result of Plaintiffs Drs. Isaacson and Reuss being regulated by the Reason Scheme, which constitute an Article III injury.[4]

## II. THE THREAT OF ENFORCEMENT TO PLAINTIFF-PHYSICIANS IS AN "IMMINENT" FUTURE INJURY THAT SATISFIES ARTICLE III UNDER *DRIEHAUS*.

Beyond eliding Plaintiff-Physicians' "actual" and ongoing injuries under the Reason Scheme, Legislative Intervenors attempt to write off the "imminent" threat of enforcement by arguing that Plaintiff-Physicians fail the *Driehaus* standard. Under *Driehaus*, the threat of enforcement is sufficiently "imminent" to constitute a cognizable Article III injury where the challenger intends "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Plaintiff-Physicians meet all three elements of the *Driehaus* standard: their vagueness claim is "arguably affected with a constitutional interest," the conduct that they wish to engage in is "arguably . . . proscribed by" the Reason Scheme, and

[4] Legislative Intervenors erroneously assess these actual and present over-compliance costs under the *Driehaus* standard. *See* Intervenors' Br. at 7–16. However, the *Driehaus* test is intended to assess the imminence of future injuries that have not yet occurred. 573 U.S. at 158–59. It therefore has no application to Plaintiff-Physicians' present and ongoing over-compliance injuries. *See Davis*, 307 F.3d at 855 ("When . . . tangible economic injury is alleged, we need not rely on the [*Driehaus*] test . . . *for the gravamen of the suit is economic injury rather than threatened prosecution*.").

they face a "credible threat of prosecution thereunder." *Id.* None of Legislative Intervenors' arguments to the contrary have any merit.

### A. Plaintiff-Physicians' Intended Conduct Is "Arguably Affected with a Constitutional Interest" Consistent with the Vagueness Doctrine and Binding Precedent.

Legislative Intervenors make two arguments that Plaintiff-Physicians' intended conduct is not "arguably affected with a constitutional interest." Both fail.

*First*, Legislative Intervenors contend that Plaintiff-Physicians cannot show that their intended conduct is "arguably affected with a constitutional interest" because *Dobbs* eliminated the federal constitutional right to abortion. Intervenors' Br. at 9–11. But Plaintiff-Physicians' vagueness claim is not based on any constitutional right to provide or receive abortion care. On the contrary, Plaintiff-Physicians assert that the Reason Scheme's vagueness offends their constitutional right to due process—regardless of whether there is a constitutional right to provide or receive abortion care.[5]

Plaintiffs allege that the Reason Scheme is unconstitutionally vague because it "fails to provide people of ordinary intelligence a reasonable opportunity to

[5] Similarly, Legislative Intervenors' analysis of whether Arizona may regulate the provision of abortion care under rational basis review is a complete red herring. Intervenors' Br. at 9–11. The question is not whether it is within the police power of the State to regulate this care, but whether the State has done so in a manner that accords with constitutional guarantees of due process.

understand what conduct it prohibits" and "authorizes or even encourages arbitrary and discriminatory enforcement" while threatening both Plaintiff-Physicians' liberty (via imprisonment) and livelihoods (via licensure action). *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Because this challenge implicates Plaintiff-Physicians' constitutional due process rights, it is "affected with a constitutional interest."

Perhaps acknowledging that Plaintiffs' vagueness claim is grounded in their due process rights, Legislative Intervenors then argue that Plaintiffs cannot establish a due process violation here (*i.e.*, a violation of their constitutional rights) because the vagueness doctrine only applies to laws that govern constitutionally protected activity. Intervenors' Br. at 8–9. This contention is false. Opening Br. at 37–40; Br. of Amici Curiae Constitutional and Federal Cts. Scholars at 15–17. "A law that does not reach constitutionally protected conduct . . . may nevertheless be challenged on its face as unduly vague, in violation of due process." *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013); *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 n.4 (2d Cir. 2015).

The vagueness doctrine is rooted in the Fifth and Fourteenth Amendments, which "guarantee that 'life, liberty, or property' may not be taken 'without due process of law.'" *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018) (Gorsuch, J., concurring). Vague laws (such as the Reason Scheme) violate due process because

they threaten individuals' life, liberty, or livelihoods without providing fair notice of what the law requires, and because their indefinite terms invite arbitrary enforcement. *See id.* at 1224–25, 1228. These due process violations accrue—contrary to Legislative Intervenors' suggestions, Intervenors' Br. at 9–10—regardless of whether the underlying conduct the law governs is constitutionally protected. As Plaintiffs and amici Constitutional and Federal Courts Scholars previously explained, the fact that a law does not govern constitutionally protected activity does not exempt it from the vagueness doctrine—it merely impacts the level of clarity the Constitution demands of its terms. *See* Opening Br. at 57–58; Br. of Amici Curiae Constitutional and Federal Cts. Scholars at 22–24; *Village of Hoffman Ests.*, 455 U.S. at 497–99.

Moreover, applying the vagueness doctrine to laws that govern conduct that is not protected by the Constitution will not allow "any professional engaged in normal business activity [to] bring an Article III 'case' or 'controversy' solely by virtue of the fact that a regulation may be vague." Intervenors' Br. at 8. The requirement that a law threaten a "life, liberty, or property" interest, the other *Driehaus* factors, as well as the requirement that the challenger's conduct actually be unclearly governed by the law, are all sufficient to ensure that an Article III "case" or "controversy" exists. *See* Opening Br. at 3, 27–29, 34–35; Br. of Amici Curiae Constitutional and Federal Cts. Scholars at 10–12, 14–17.

*Second*, Legislative Intervenors argue that—even if Plaintiffs present a "standalone due process claim"—*Driehaus* "require[s]" Plaintiffs to establish a separate and additional "constitutional interest," Intervenors' Br. at 9, 11. Legislative Intervenors' only support for this strained interpretation, however, is the fact that *Driehaus* happened to also involve the right of free expression.[6]

While canonical cases like *Driehaus* have involved "the First Amendment right of free expression, many of these same cases have also presented the due process interest in avoiding vague criminal prohibitions." *Knife Rts.*, 802 F.3d at 384 n.4 (citations omitted). Legislative Intervenors presume—without explanation or reason—that this means the underlying conduct an allegedly vague law governs must be constitutionally protected. But, as the Second Circuit rightly pointed out, the Supreme Court "has drawn no distinction between" the constitutional due process interest in avoiding vague criminal prohibitions and free expression "in pronouncing" pre-enforcement standing. *Id.* Moreover, given that the purpose of the Article III injury-in-fact requirement is to ensure that a litigant has an adequate personal stake in the outcome of the case, *Warth v. Seldin*, 422 U.S. 490, 498 (1975),

[6] Legislative Intervenors further argue that *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340 (11th Cir. 2011)—an isolated and outlier Eleventh Circuit case—supports this interpretation because the Court in *Bankshot* required the challengers to allege a separate and additional constitutional violation beyond due process. However, *Bankshot* is inapposite for the numerous reasons Plaintiffs identified in their opening brief, *see* Opening Br. at 54–60—none of which are addressed by Legislative Intervenors.

requiring an additional and separate constitutional harm would be unduly restrictive, causing federal courts to abandon their duty to decide "federal constitutional question[s]" within their jurisdiction. *Baggett*, 377 U.S. at 375 n.11.

Further, the Supreme Court has found pre-enforcement standing where no constitutional interest is at stake (due process or otherwise), *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–31 (2007),[7] and this Court and the Second Circuit have found pre-enforcement standing where only due process interests are present, *see Valle del Sol*, 732 F.3d at 1015; *Knife Rts.*, 802 F.3d at 384 n.4. Indeed, as this Court has explained, allegations that a statute "is unconstitutionally ambiguous and coercive" are sufficient to establish a constitutional interest for the purpose of pre-enforcement standing. *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022). The fact that *Driehaus* involved a separate and additional constitutional interest cannot establish such a "requirement," particularly in light of these contrary and more recent precedents.

---

[7] As noted previously, *see* Opening Br. at 38 n.7, it is unclear if alleging any constitutional violation is necessary for pre-enforcement review, or whether a plaintiff merely is required to allege that the legal right it is asserting (constitutional or otherwise) is being violated. *Cf. MedImmune*, 549 U.S. at 122–25, 128–31 (recognizing standing to challenge patent validity based on clear threat of action for breach of license or infringement).

### B. Plaintiffs' Intended Conduct to Provide Care to Patients with Suspected or Known Fetal Conditions Is "Arguably . . . Proscribed by the Statute."

An intended course of conduct is "arguably . . . proscribed by the statute" where engaging in it exposes the plaintiff to a threat of prosecution that is "not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302. Legislative Intervenors' contention that this factor can only be met if Plaintiff-Physicians "intend to [perform abortions] knowingly for the sole reason of a genetic abnormality," Intervenors' Br. at 13–14, is entirely incompatible with the Reason Scheme's inconsistent and imprecise language, as already discussed *supra* Part I.A.

As Plaintiffs explained in their opening brief, *see* Opening Br. at 40–44, Plaintiff-Physicians wish to provide as much care to patients with suspected or known fetal conditions as is legally permissible under the Scheme, *see* 2-ER-144; 2-ER-152–54, and, indeed, prior to the Scheme's enactment, provided care to patients with suspected or known fetal conditions regardless of the patient's reason for seeking care. 2-ER-251–55; 2-ER-231–33. But, given the Reason Scheme's vagueness, Plaintiff-Physicians fear that providing care to patients with suspected or known fetal conditions exposes them to a real, non-hypothetical threat of prosecution—regardless of how hard they try to comply with the Scheme. *See* Opening Br. at 42. For instance, Drs. Isaacson and Reuss fear that any circumstantial evidence surrounding a patient with a fetal diagnosis—including the mere existence

of the fetal diagnosis—could lead to prosecution under the Reason Scheme were they to provide abortion care. 2-ER-261, 263, 267; 2-ER-236.

The district court previously credited Drs. Isaacson's and Reuss's fear of prosecution as reasonable and dictated by "[t]he evidence, along with common sense." 2-ER-179; *see also* 1-ER-10. In reaching this conclusion, the district court cited "Arizona's broad definition of knowledge and the vagueness of the Reason [Scheme's] criminal and civil liability provisions," and determined that many abortion providers would refuse to provide care "whenever they have information from which they might infer that a fetal genetic abnormality is a reason why a patient is seeking to terminate a pregnancy." 2-ER-179.[8]

Legislative Intervenors' only response to Plaintiff-Physicians' reasonable, non-imaginary fears is to present a simplified version of the Scheme that they did not actually enact. *See* Intervenors' Br. at 1–2.

---

[8] Legislative Intervenors suggest that Plaintiff-Physicians' intended conduct is not arguably proscribed by the Reason Scheme because the Scheme does not "penalize[] Plaintiffs for their counseling or related speech." Intervenors' Br. at 13 (quoting 1-ER-11). This argument ignores the abortion care Plaintiffs Drs. Isaacson and Reuss previously provided and would continue to provide to patients with suspected or known fetal conditions in the absence of the Reason Scheme. In other words, Legislative Intervenors ignore non-speech conduct clearly impacted by the Reason Scheme. Further, regardless of whether the Scheme penalizes "counseling or related speech" on its own, healthcare providers, including members of Plaintiff Arizona Medical Association, fear that they could be held liable for aiding or facilitating a violation of the Reason Scheme should they refer for an abortion and the physician providing that care is ultimately arbitrarily prosecuted for doing so. Opening Br. at 42–44. Although overlooked in the district court's second preliminary injunction order, the district court acknowledged this reality in its first preliminary injunction order. *See* 2-ER-171.

### C. Legislative Intervenors' Arguments Regarding "Credible Threat of Enforcement" Similarly Lack Merit.

Plaintiffs have shown a credible threat of enforcement if they violate the Reason Scheme.

*First*, Legislative Intervenors' conclusion that Plaintiffs cannot articulate a concrete plan to violate the law "[u]nless Plaintiffs intend to abort unborn children knowingly for the sole reason of a genetic abnormality," Intervenors' Br. at 13–14, is—again—merely a regurgitation of their earlier flawed arguments that fail to account for the Scheme's actual terms. *See supra* Part I.A.

Regardless, under *Tingley*, plaintiffs may establish a "concrete plan to violate the law" if they have curtailed past activities punishable under the challenged law, and which, but for the challenged law, they would like to continue. *Tingley v. Ferguson*, 47 F.4th 1055, 1067–68 (9th Cir. 2022) (collecting cases). Only a "plan or desire" to engage in this conduct is necessary, *id.* at 1067, particularly where a plaintiff has altered its prior activities due to the threat of prosecution under the challenged law. *See, e.g.*, *Driehaus*, 573 U.S. at 166–67.

Plaintiff-Physicians' declarations and prior activities demonstrate the requisite "plan or desire" to violate the law.[9] Plaintiff-Physicians previously

---

[9] As noted above, Legislative Intervenors misunderstand the Reason Scheme's prohibitions and the ways in which its vague terms coerce Plaintiff-Physicians' over-compliance with the law. Rather than "simply invok[ing] their right to advise their

provided abortion care to patients with suspected or known fetal conditions regardless of their reason, and even if it was the patient's "sole" reason for seeking care. *See* Opening Br. at 11, 46; 2-ER-251; 2-ER-233. But for the Reason Scheme, Plaintiff-Physicians would continue to offer abortion care in this manner, including to patients whose "sole" reason for seeking care is a fetal condition. *See* Opening Br. at 46–47. Moreover, but for the Reason Scheme's vague terms, Plaintiff-Physicians would offer as much care as is legally permissible under the Scheme. *See* 2-ER-144; 2-ER-152–54; 2-ER-245. Yet, because Plaintiff-Physicians fear prosecution under the Scheme and cannot decipher which abortion care for patients with suspected or known fetal conditions remains legal, they have severely curtailed this care to avoid, as best they can, the threat of prosecution. Opening Br. at 19–21, 46–47.

*Second*, Legislative Intervenors suggest that Plaintiffs cannot establish a "specific warning or threat" because the current Attorney General has disavowed enforcement. But the Ninth Circuit has "never held that a specific threat is necessary to demonstrate standing" where, as here, a plaintiff's "fear of criminal prosecution . . . is not imaginary or wholly speculative." *Valle del Sol*, 732 F.3d at 1015 n.5 (citation omitted). In such cases, courts will find standing even where the

---

clients," Intervenors' Br. at 14, Plaintiffs Drs. Isaacson and Reuss are now unable to provide abortion care to patients that they would previously have been able to serve, but for the Reason Scheme, and have ceased providing care when there is even the slightest indication of a fetal condition. *See, e.g.*, Opening Br. at 31–34.

penalty "has not yet been applied and may never be applied." *Id.* (quoting *Babbitt*, 442 U.S. at 302).

Moreover, courts also "consider[] . . . as a factor" whether all or just some enforcers have issued a disavowal. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (collecting cases). As discussed at length in Plaintiffs' opening brief, *see* Opening Br. at 48–52, the Attorney General[10] is only one of the many enforcers of the Reason Scheme—including the Arizona Department of Health Services, the Arizona Medical Board, and the County Attorneys[11]—many of whom have not disavowed enforcement. *See, e.g.*, 2-ER-17–18; 2-ER-22. This refusal to disavow enforcement—not to mention the risk of lawsuits by individuals under the Reason Scheme's private right of action, *see* A.R.S. § 13-3603.02(D); A.R.S. § 36-2158;

[10] Though Legislative Intervenors decry Plaintiffs' fears of prosecution by a future Attorney General as an "invented parade of horribles," Intervenors' Br. at 15, this overlooks that the statute of limitations for violations of the Reason Scheme is seven years, which extends well beyond the current Attorney General's four-year term. *See* Ariz. Const. art. V, § 1(A); A.R.S. § 13-107(B)(1). Plaintiffs have a reasonable fear that any violation of the Reason Scheme, even if not prosecuted by this Attorney General, could be prosecuted by the next. In any event, "[w]ell-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law." *Baggett*, 377 U.S. at 373.

[11] Though Legislative Intervenors state that Attorney General Mayes will "prevent county attorneys from enforcing" the Reason Scheme, Intervenors' Br. at 14–15, it is unclear that her supervisory authority under A.R.S. § 41-193(A) extends so far. Moreover, Legislative Intervenors overstate Attorney General Mayes' representations: she has stated merely that she would "advise" County Attorneys that prosecutions for obtaining or "providing reproductive care or IVF services would violate the Arizona Constitution." Kris Mayes, *12 Point Plan* at 4, https://bit.ly/3DEiEHf.

*Driehaus*, 573 U.S. at 164—indicates a credible threat, *Tingley*, 47 F.4th at 1068; *Yellen*, 34 F.4th at 850.

*Third*, Legislative Intervenors criticize Plaintiffs for not citing any "history of prosecution or enforcement of the statute," Intervenors' Br. at 15, but in the context of new laws, history of enforcement carries little weight. *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). Indeed, here, the lack of enforcement history is particularly irrelevant given that Plaintiff-Physicians have severely curtailed their activities in an attempt to avoid prosecution or penalty ever since the Reason Scheme took effect. *See* Opening Br. at 53. Plaintiff-Physicians' efforts to "eliminate[] the imminent threat of harm," do not and cannot "preclude subject-matter jurisdiction because the threat-eliminating behavior [has been] effectively coerced." *MedImmune*, 549 U.S. at 129.

Accordingly, Plaintiffs have demonstrated a genuine threat of enforcement based on their desire to provide care that would violate the Reason Scheme, the threat of enforcement from state officials and private individuals, and irrespective of the lack of history of past enforcement of a new law. *See Tingley*, 47 F.4th at 1067.

* * * * * * * * * *

In summary, given this credible threat of prosecution, Plaintiffs have shown "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution

thereunder" that satisfies Article III. *Driehaus*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298).

## III. PLAINTIFF-PHYSICIANS SATISFY BOTH THE CAUSATION AND REDRESSABILITY ELEMENTS OF STANDING.

Legislative Intervenors finally argue that—even assuming Plaintiff-Physicians demonstrate Article III injuries—they cannot demonstrate the other elements of standing, namely causation and redressability. Intervenors' Br. at 16. Plaintiff-Physicians plainly satisfy both elements.

*First*, Legislative Intervenors' contention that Plaintiff-Physicians' injuries are not caused by the Reason Scheme merely boils down to the same "self-infliction" arguments refuted above that are based on their blatant misrepresentations of the Scheme's statutory language. *See supra* Part I.A.

*Second*, Legislative Intervenors' contention that Plaintiff-Physicians fail the redressability element rests on a clear misunderstanding of this element. Plaintiffs need not show a "likelihood of success" (although they could) to satisfy the redressability prong of standing. Intervenors' Br. at 16. Rather, redressability requires the Court to consider whether, if Plaintiffs were to succeed in their challenge, their alleged harms are likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). Equating "likelihood of success" with "redressability"—as Legislative Intervenors suggest—would fundamentally be at odds with the Supreme Court's and this Court's clear instruction

to avoid "peek[ing] impermissibly at the merits in determining questions of justiciability." *Tingley*, 47 F.4th at 1071. Whether an injury satisfies Article III "in no way depends on the merits" of a plaintiff's claim. *Warth*, 422 U.S. at 500.

Plaintiffs unquestionably satisfy the redressability element. If Plaintiffs were to secure injunctive relief against the Reason Scheme, they could provide the full spectrum of care to all patients that they previously provided. At a minimum, obtaining declaratory relief that clarifies the Reason Scheme's prohibitions would alleviate its inherent uncertainty, so that providers could comply with the law rather than being forced to over-comply for fear of draconian penalties under an unintelligible statute.

## CONCLUSION

For the reasons set forth above, nothing in Legislative Intervenors' response casts doubt on the justiciability of Plaintiffs' challenge. This Court should vacate the district court's order finding no Article III injury and denying Plaintiffs preliminary injunctive relief against the Reason Scheme, and remand for further consideration on the merits of Plaintiffs' Renewed Motion for Preliminary Injunction.

Date: June 21, 2023

Respectfully submitted,

*/s/ Jessica Sklarsky*

Jared G. Keenan
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org

*Counsel for Plaintiffs-Appellants*

Alexa Kolbi-Molinas
Rebecca Chan
Ryan Mendías
Lindsey Kaley
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
lkaley@aclu.org

*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

Jessica Sklarsky
Gail Deady
Catherine Coquillette
Center For Reproductive Rights
199 Water Street
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org

Jen Samantha D. Rasay
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 628-0286
jrasay@reprorights.org

Ralia Polechronis
Justin Mungai
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
jmungai@wilkinsonstekloff.com

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

ADDITIONAL COUNSEL ON NEXT PAGE

Beth Wilkinson
Anastasia Pastan
Anthony Ferrara
Elizabeth Keys
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
aferrara@wilkinsonstekloff.com
ekeys@wilkinsonstekloff.com

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** ___23-15234________________________

I am the attorney or self-represented party.

**This brief contains __4,770__ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- [ ] it is a joint brief submitted by separately represented parties;
- [ ] a party or parties are filing a single brief in response to multiple briefs; or
- [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *_/s/ Jessica Sklarsky*________________ ***Date*** *__June 21, 2023___*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit through the appellate CM/ECF system. I further certify that counsel for all parties are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jessica Sklarsky*
Jessica Sklarsky