**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAUL A. ISAACSON, M.D., on behalf of himself and his patients; ERIC M. REUSS, M.D., M.P.H, on behalf of himself and his patients; NATIONAL COUNCIL OF JEWISH WOMEN, INC., Arizona Section; ARIZONA NATIONAL ORGANIZATION FOR WOMEN; ARIZONA MEDICAL ASSOCIATION, on behalf of itself, its members and its members patients, | No. 23-15234<br><br>D.C. No. 2:21-cv-01417-DLR<br><br><br>OPINION |

*Plaintiffs-Appellants*,

   v.

KRISTIN K. MAYES, in her official capacity as Arizona Attorney General; ARIZONA DEPARTMENT OF HEALTH SERVICES; JENNIFER CUNICO, in her official capacity as Interim Director of the Arizona Department of Health Services; ARIZONA MEDICAL BOARD; PATRICIA MCSORLEY, Executive Director of the Arizona Medical Board, in her official capacity,

*Defendants-Appellees*,

WARREN PETERSEN; BEN TOMA,

*Intervenors*,

 and

MICHAEL B. WHITING, County
Attorney for Apache County, in his
official capacity; BRIAN M.
MCINTYRE, County Attorney for
Cochise County, in his official
capacity; WILLIAM PATRICK
RING, County Attorney for Coconino
County, in his official capacity;
BRADLEY D. BEAUCHAMP,
County Attorney for Gila County, in
his official capacity; SCOTT
BENNETT, County Attorney for
Graham County, in his official
capacity; JEREMY FORD, County
Attorney for Greenlee County, in his
official capacity; TONY ROGERS,
County Attorney for La Paz County, in
his official capacity; ALLISTER
ADEL, County Attorney for Maricopa
County, in her official capacity;
MATTHEW SMITH, County
Attorney for Mohave County, in his
official capacity; BRAD CARLYON,
County Attorney for Navajo County,

ISAACSON V. MAYES                    3

in his official capacity; LAURA
CONOVER, County Attorney for
Pima County, in her official capacity;
KENT VOLKMER, County Attorney
for Pinal County, in his official
capacity; GEORGE SILVA, County
Attorney for Santa Cruz County, in
his official capacity; SHEILA POLK,
County Attorney for Yavapai County,
in her official capacity; JON
RODNEY SMITH, County Attorney
for Yuma County, in his official
capacity,

　　　　　　　*Defendants*.

Appeal from the United States District court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted September 11, 2023
Phoenix, Arizona

Filed October 30, 2023

Before:  Ronald M. Gould, Andrew D. Hurwitz, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Abortion/Standing

The panel reversed the district court's denial, for lack of standing, of plaintiffs' motion for a preliminary injunction in an action alleging that an Arizona law criminalizing the performance of certain abortions is unconstitutionally vague, and remanded.

Arizona's Reason Regulations criminalize the performance of abortions sought solely because of genetic abnormalities in the fetus or embryo. Plaintiffs, including individual physicians based in Arizona, allege they are over-complying with the laws because it is unclear what conduct falls within the laws' grasp. Following a remand by the Supreme Court, the district court denied plaintiffs' motion for a preliminary injunction, finding that they lacked standing in light of *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), which overruled *Roe v. Wade* and eliminated the constitutional right to an abortion.

The panel held that the physician plaintiffs had demonstrated both actual and imminent injuries sufficient for standing.

Plaintiffs suffered an actual injury—economic losses—because they lost money by complying with the laws, which forbade them from providing medical services they would otherwise provide, and these economic losses were fairly

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

traceable to the statute. A favorable decision would relieve plaintiffs of compliance with the laws and restore the revenue generated by the prohibited procedures.

Plaintiffs sufficiently alleged two imminent future injuries that affected interests protected by the Fifth and Fourteenth Amendments: (1) a liberty interest that was imperiled because violating the statute could result in imprisonment; and (2) a property interest that was threatened because a statutory violation could result in revocation of plaintiffs' licenses, loss of revenue, and monetary damages. Plaintiffs adequately demonstrated that their conduct was proscribed by statute, that there was a credible threat of prosecution given that that at least one county attorney intended to enforce restrictive abortion laws and that there was a credible threat of civil enforcement. Finally, plaintiffs satisfied the causation and redressability requirements with respect to their imminent future injury.

The panel expressed no opinion on the merits of plaintiffs' claims.

---

## COUNSEL

Jessica Sklarsky (argued), Gail M. Deady, and Catherine Coquillette, Center for Reproductive Rights, New York, New York; Jen Samantha D. Rasay, Center for Reproductive Rights, Washington, D.C.; Jared G. Keenan, American Civil Liberties Union of Arizona, Phoenix, Arizona; Beth Wilkinson, Anastasia Pastan, Anthony P. Ferrara, and Elizabeth Keys, Wilkinson Stekloff LLP, Washington, D.C.; Ralia Polechronis and Justin Mungai, Wilkinson Stekloff LLP, New York, New York; for Plaintiff-Appellants Paul A. Isaacson, M.D., National Council of Jewish Women

(Arizona Section), Inc., and Arizona National Organization for Women.

Denise M. Harle (argued), Alliance Defending Freedom, Lawrenceville, Georgia; Kevin H. Theriot, Alliance Defending Freedom, Scottsdale, Arizona; Erin M. Hawley, Alliance Defending Freedom, Washington, D.C.; for Intervenors.

Alexa Kolbi-Molinas, Rebecca Chan, Ryan Mendías, and Lindsey Kaley, American Civil Liberties Union, New York, New York; Jared G. Keenan, American Civil Liberties Union of Arizona, Phoenix, Arizona; Anthony P. Ferrara, Wilkinson Stekloff LLP, Washington, D.C.; for Plaintiffs-Appellants Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association.

Hayleigh S. Crawford and Luci D. Davis, Attorneys; Nathan T. Arrowsmith, Joshua Bendor, and Alexander Samuels, Assistant Attorneys General; Arizona Attorney General's Office, Phoenix, Arizona; for Defendant-Appellee Kristin K. Mayes.

Aubrey J. Corcoran and Kevin Ray, Assistant Attorneys General, Arizona Attorney General's Office, Phoenix, Arizona; for Defendant-Appellees Arizona Department of Health and Human Services and Jennifer Cunico, Interim Director of the Arizona Department of Health Services.

Marc H. Harris, Assistant Attorney General, Arizona Attorney General's Office, Phoenix, Arizona, for Defendant-Appellees Arizona Medical Board et. al.

Amanda S. Berman, April N. Ross, Mara Lieber, Elizabeth C. Riegel, Kaylah Alexander, and Halie E. Kaplan, Crowell & Moring LLP, Washington, D.C, for Amici Curiae Constitutional and Federal Courts Scholars.

**OPINION**

GOULD, Circuit Judge:

This suit by Arizona physicians, medical associations, and advocacy groups claims that an Arizona law criminalizing the performance of certain abortions is unconstitutionally vague. The district court denied a preliminary injunction, finding that Plaintiffs lacked standing. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we reverse and remand.

## I. Factual and Procedural Background

### A. The Parties

Plaintiffs are individual physicians based in Arizona, joined by several Arizona medical and advocacy groups. The named Defendants are Arizona Attorney General Kristin Mayes, all Arizona County Attorneys, and various state enforcement agencies. The Attorney General declined to defend this lawsuit, and the district court allowed Warren Petersen, President of the Arizona Senate, and Ben Toma, Speaker of the Arizona House of Representatives, to intervene.

### B. The Arizona Law

In 2021, Arizona enacted new abortion laws, the relevant sections of which the parties refer to as the "Reason Regulations." S.B. 1457, 55th Leg., 1st Reg. Sess. (Ariz. 2021). The Reason Regulations criminalize the performance of abortions sought solely because of genetic abnormalities in the fetus or embryo. The statute creates two different felonies: (1) any person who "knowingly . . . [s]olicits or accepts monies to finance . . . an abortion because of a

genetic abnormality" of a fetus or embryo is guilty of a class 3 felony punishable by two to 8.75 years imprisonment, Ariz. Rev. Stat. ("A.R.S.") §§ 13-3603.02(B)(2), 13-702(D); and, (2) any person who "[p]erforms an abortion knowing that the abortion is sought solely because of a genetic abnormality" of the fetus or embryo is guilty of a class 6 felony punishable by four months to two years imprisonment, A.R.S. §§ 13-3603.02(A)(2), 13-702(D).[1]

The Reason Regulations prohibit only the performance of these abortions and do not impose criminal penalties on women who have them. The Arizona Medical Board and Department of Health Services may also impose various penalties, including monetary fines, suspension or revocation of licenses, or public censure, for violation of the Reason Regulations. A.R.S. §§ 32-1401(27); 32-1403(A)(2), (A)(5); 32-1403.01(A); 32-1451.

The Reason Regulations also provide a private right of action for the father of the fetus or embryo aborted in a prohibited procedure. The father, if married to the pregnant woman, may sue the performing physician to obtain "appropriate relief." A.R.S. § 13-3603.02(D).

C. The Physician Plaintiffs

The physician Plaintiffs are Arizona obstetrician-gynecologists. They provide sophisticated testing and fetal screening for genetic conditions. The physicians discuss the results of these tests with their patients and present options, including abortion. Before the enactment of the Reason

---

[1] The Regulations provide exceptions for a "lethal fetal condition" and a "medical emergency." A.R.S. §§ 36-2158(G)(2), 13-3603.02(A). The statute of limitations for each crime is seven years. A.R.S. § 13-107(B)(1).

Regulations, Plaintiffs regularly performed abortions in cases where fetuses had confirmed genetic abnormalities. Since the law was enacted, Plaintiffs have "significantly curtailed their medical practices." Plaintiffs no longer provide abortions to "patients with likely or confirmed fetal conditions," even though these patients previously made up a significant part of Plaintiffs' businesses.

Although the Reason Regulations do not outlaw all abortions involving genetic abnormalities, Plaintiffs allege that they are "over-complying" with the law and staying away from those abortions entirely, because it is unclear what conduct falls within the law's grasp. Plaintiffs allege, for example, that it is unclear what fetal conditions may constitute a "genetic abnormality," how physicians should assess the role a genetic abnormality plays in a patient's subjective decision to get an abortion, what level of knowledge a physician must have about a patient's subjective motivations, and what circumstantial evidence might be used against physicians to establish that knowledge.

D. Procedural History

This action was originally filed in September 2021. The district court preliminarily enjoined the state Defendants from enforcing the Reason Regulations, holding that they were "likely . . . void for vagueness and impose[d] an undue burden on the rights of women to terminate pre-viability pregnancies." Defendants[2] sought a partial stay of the preliminary injunction, which we denied (Case No. 21-16645, ECF No. 35). Defendants then sought a stay pending

---

[2] When appeal was first taken, Mark Brnovich was the Arizona Attorney General, and he defended the case.

appeal from the Supreme Court. On June 30, 2022, the United States Supreme Court converted the stay application into a petition for a writ of certiorari, granted review, and vacated and remanded the case for further consideration in light of *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), which overruled *Roe v. Wade* and eliminated the constitutional right to an abortion, *Brnovich v. Isaacson*, 142 S. Ct. 2893 (2022).

After remand, Plaintiffs renewed their motion for a preliminary injunction, focusing solely on their vagueness claim. The district court denied the motion, holding that although it had previously ruled in favor of Plaintiffs on vagueness grounds, Plaintiffs no longer had standing for pre-enforcement review in light of *Dobbs*. The Plaintiffs timely appealed.

## II. Standard of Review

"We review *de novo* issues of law underlying the preliminary injunction, including questions of jurisdiction over Plaintiff's claims." *LA All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021). We "review *de novo* questions of standing." *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022).

## III. Discussion

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The primary dispute

here is whether there is an injury in fact. We hold that Plaintiffs have demonstrated an injury sufficient for standing.**[3]**

A.  Injury in Fact

"An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Driehaus*, 573 U.S. at 158 (cleaned up). The purpose of the injury requirement is to ensure that a plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted).

Plaintiffs allege both actual injury and imminent future injury. They assert that the statute's vagueness has forced them to "over-compl[y]," causing them to cease providing abortion care to "patients with suspected or known fetal diagnoses—even if that care could arguably fall outside of the Reason [Regulations'] grasp," rather than risk prosecution or penalties. Plaintiffs allege that their coerced over-compliance has already caused them economic injury. Plaintiffs also allege future injuries "associated with the threat of prosecution under the Reason [Regulations] were they to attempt to decipher and offer as much care as is legally permissible under the [Regulations], which is their goal."

---

[3] We base our decision only on the allegations of the individual physician plaintiffs. In this section, the term "Plaintiffs" refers only to the physician plaintiffs. We do not decide whether the associations have standing. *See Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008) ("[T]he presence in a suit of even one party with standing suffices to make a claim justiciable.").

### 1. Actual Injury

The district court did not interpret Plaintiffs' complaint as alleging an actual injury. The closest the district court came to recognizing Plaintiffs' economic interest in performing abortions was noting that any such interest was outweighed by State interests, as "there is no right to practice medicine which is not subordinate to the police power of the states." *Isaacson v. Mayes*, No. CV-21-01417-PHX-DLR, 2023 WL 315259, at \*5 (D. Ariz. Jan. 19, 2023) (quoting *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011)). For the following reasons, we hold that Plaintiffs have sufficiently alleged an actual injury.

"For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017); *see also Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 855-56 (9th Cir. 2002) ("Economic injury is clearly a sufficient basis for standing." (quoting *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996), *abrogated in part on other grounds as recognized by Teter v. Lopez*, 76 F.4th 938, 943-45 (9th Cir. 2023))). We held in *National Audubon Society* that the plaintiff-fur-trappers' "economic injury [was] directly traceable to the fact that [the challenged law] explicitly forbids the trapping they would otherwise do." 307 F.3d at 856. In other words, because the plaintiffs lost money by complying with the law, they had suffered an actual injury.

Contrary to the holding of the district court, standing does not also require that the economic injury be sustained while engaging in an activity separately protected by the Constitution, such as First Amendment protected speech. Rather, our cases make clear that an Article III injury in fact

can arise when plaintiffs are simply prevented from conducting normal business activities. In *Montana Shooting Sports Association v. Holder*, we concluded that the plaintiffs had an economic injury sufficient for standing where federal firearms regulations prevented a business from manufacturing and selling unlicensed firearms. 727 F.3d 975, 979-80 (9th Cir. 2013). In *National Audubon Society*, the underlying conduct affected by the law was fur trapping. *See* 307 F.3d at 842. In *Association of Public Agency Customers v. Bonneville Power Administration*, we predicated standing on a power-generator's contractual right to charge higher rates for electricity. 733 F.3d 939 (9th Cir. 2013). None of the underlying business activities in these cases—selling firearms, fur-trapping, power-generation— were themselves constitutionally protected, but we held that there was standing based on an economic injury.

We conclude that there is no reason to treat the business activity in this case—providing medical services— differently. Plaintiffs allege that they are losing money because the Reason Regulations forbid them from providing medical services they would otherwise provide.[4]

That Plaintiffs' services concern abortion is irrelevant to the standing analysis. Plaintiffs' standing is based on their economic interest in providing medical services. That their services include abortion does not alter the fact that Plaintiffs make money providing these services and have lost money

---

[4] As discussed in greater detail below, Plaintiffs' economic losses are not limited to their *over*-compliance but also proceed from simply complying with the law. Plaintiffs previously gained revenue from abortions openly sought because of genetic abnormalities. The Reason Regulations eliminated that source of revenue.

because the Reason Regulations restrict what services they can provide.

The State's police power and interest in regulating the practice of medicine, relied upon by the district court, are also irrelevant. Plaintiffs do not dispute Arizona's authority to regulate their industry generally, nor do they claim that the Reason Regulations were an improper exercise of that authority. Any weighing of the State's interest against the interest asserted by Plaintiffs should be undertaken upon consideration of the merits, not to determine an injury in fact.

In summary, Plaintiffs' alleged economic losses—notwithstanding their relationship to abortion—qualify as an actual injury in fact sufficient for Article III standing.

### 2. Causation

We next consider *Lujan*'s causation prong, which requires that Plaintiffs' injury be "fairly traceable" to the Reason Regulations.[5]  504 U.S. at 560. Intervenors contend that economic losses from Plaintiffs' over-compliance with the Regulations are not fairly traceable to the Regulations themselves, because Plaintiffs' over-compliance is a result of misreading the law. Intervenors' argument boils down to the idea that the Regulations are not vague and that Plaintiffs do not need to over-comply so long as they avoid the proscribed conduct. This argument of Intervenors, however, goes to the merits, not to standing, because it is settled that standing "in no way depends on the merits." *Warth*, 422 U.S. at 500. In conducting a standing analysis, courts are to take all material allegations as true. *Id.* at 501. This includes an allegation that a law is unconstitutionally vague. *Arizona*

---

[5] The district court did not consider this prong because it found Plaintiffs had not alleged an injury in fact. *Isaacson*, 2023 WL 315259, at *5–7.

*v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022) ("Viewing the [statute] through [the plaintiff's] eyes, we must accept—for standing purposes—its allegations that the condition is unconstitutionally ambiguous and coercive."). If the Reason Regulations are indeed vague, then cautious over-compliance is a logical result fairly traceable to the statute.

Moreover, causation is evident even without considering Plaintiffs' allegations of vagueness or over-compliance. Plaintiffs previously had generated revenue from abortions openly sought because of genetic abnormalities. The Reason Regulations now prohibit those types of abortions. Even if the Regulations were crystal clear, Plaintiffs would still lose revenue from the abortions that they can no longer provide.

The economic losses Plaintiffs have alleged that they incurred in their attempts to comply with the Reason Regulations are fairly traceable to the statute, and the causation prong of *Lujan* is met.[6]

B. Imminent Injury

In addition to actual economic injury, Plaintiffs allege imminent future injuries that serve as a basis for standing.

When a claimed injury has not yet occurred, a plaintiff must show that the potential harm is sufficiently imminent to qualify as an injury in fact. *See Driehaus*, 573 U.S. at 159; *see also San Diego Gun*, 98 F.3d at 1126. A plaintiff has standing if: "(1) [the plaintiff] ha[s] alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) but the conduct is 'proscribed by a statute;' and (3) 'there exists a credible threat of

---

[6] *Lujan*'s third prong, redressability, is also satisfied. A favorable decision would relieve Plaintiffs of compliance with the law and restore the revenue generated by the prohibited procedures.

prosecution thereunder.'"    *Driehaus*, 573 U.S. at 159
(quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298
(1979)).

> ## 1.  *Intention to Engage in Conduct Affected with a Constitutional Interest*

The district court concluded that Plaintiffs did not satisfy
the first prong of *Driehaus* because their conduct—
performing abortions—was no longer "affected with a
constitutional interest" after *Dobbs*. *Isaacson*, 2023 WL
315259, at \*5.   Citing an Eleventh Circuit opinion, the
district court held that pre-enforcement procedural due
process claims are cognizable only if "the litigant is chilled
from engaging in constitutionally protected activity." *Id.* at
\*4 (quoting *Bankshot Billiards, Inc. v. City of Ocala*, 634
F.3d 1340, 1349 (11th Cir. 2011)).   Because "Plaintiffs'
ability to provide [abortion] care without undue state
interference is a battle fought and lost in *Dobbs*," the district
court reasoned that the chilling effect of the Reason
Regulations on Plaintiffs' abortion services did not implicate
a constitutional interest. *Id.* at \*5, \*7.

We conclude that *Bankshot* is not persuasive and hold
that the district court erred by applying it to determine that
there was no standing.   Under our Circuit precedent, a
chilling effect is only a cognizable injury in "overbreadth
facial challenges involving protected speech" under the First
Amendment. *San Diego Gun*, 98 F.3d at 1129 (describing
this context as the only exception to the general rule that
"existence of a 'chilling effect' . . . has never been
considered a sufficient basis, in and of itself, for prohibiting
. . . [government] action" (quoting *Younger v. Harris*, 401
U.S. 37, 51 (1971))).

Plaintiffs need not allege a chilling effect to bring their vagueness claim, and speech is not the only constitutional interest on which Article III standing can be based. A void-for-vagueness challenge is rooted in the Due Process Clause. And an imminent threat to life, liberty, or property interests without due process of law, in violation of the Fifth and Fourteenth Amendments, is a cognizable injury. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982) ("A law that does not reach constitutionally protected conduct . . . may nevertheless be challenged on its face as unduly vague, in violation of due process."). The district court's suggestion that due process challenges, including vagueness challenges, cannot be reviewed before enforcement—because "we do not know if the litigant will ever be deprived of his liberty without due process"—is also incorrect. The logic of such a rule would bar all claims based on the prospect of imminent future injury. We cannot discern the future and cannot *know* whether future harm will actually occur. But we can, and do, try to decide whether the harm is sufficiently likely so that the litigant need not wait until the harm occurs.

Plaintiffs here allege two imminent future injuries affecting interests protected by the Fifth and Fourteenth Amendments: (1) the Reason Regulations imperil Plaintiffs' liberty because violating the statute could result in imprisonment, and (2) the statute threatens their property because a statutory violation may result in revocation of Plaintiffs' licenses, loss of revenue, and monetary damages. Plaintiffs satisfy the first *Driehaus* prong's requirement.

### 2. *Proscribed by Statute*

Because Plaintiffs satisfy the first *Driehaus* prong, we proceed to the other prongs not considered by the district

court.  As to the second prong, Plaintiffs have adequately demonstrated that their conduct is "proscribed by a statute." Plaintiffs declared an intention to perform abortions up to the legal limits of the Reason Regulations but urge that, because those limits are unclear, many abortions they would otherwise perform could be deemed violations of the statute. Plaintiffs' vagueness allegations must be taken as true for the purpose of determining standing and, if those allegations are true, then Plaintiffs' conduct may violate the statute.

### 3. *Threat of Prosecution*

The final *Driehaus* prong requires Plaintiffs to show a "credible threat of prosecution."  573 U.S. at 159.  To evaluate the threat of prosecution, we consider: (1) whether the plaintiff has a "concrete plan" to violate the law, (2) whether the enforcement authorities have "communicated a specific warning or threat to initiate proceedings," and (3) whether there is a "history of past prosecution or enforcement." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (*en banc*).

Plaintiffs allege a plan to violate the law because they intend to engage in conduct arguably proscribed by the Reason Regulations.  There is little need to show a "history of past prosecution or enforcement," because the Regulations were only recently enacted and then enjoined until June 2022.[7]  Plaintiffs also allege that they are over-complying with the law to avoid prosecution.  Their choice to eliminate the threat of enforcement by not doing what they want to do should not bar their suit.  *See MedImmune, Inc. v.*

---

[7] Standing is evaluated based on the facts at the time of filing.  *Lujan*, 503 U.S. at 569 n.4.  This action was filed on June 25, 2022, almost immediately after the Reason Regulations first became enforceable.

*Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("Given [the] genuine threat of enforcement, we did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action."); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[E]nforcement history alone is not dispositive. Courts have found standing where no one had ever been prosecuted under the challenged provision." (citing *Babbitt*, 442 U.S. at 302)).

That leaves us to consider "whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings." *Tingley*, 47 F.4th at 1067 (cleaned up) (citation omitted). Our cases have taken a broad view of this factor as one example of how a litigant might demonstrate "a plausible and reasonable fear of prosecution," *Wolfson v. Brammer*, 616 F.3d 1045, 1062 (9th Cir. 2010) (emphasis omitted), in contrast to an "imaginary or wholly speculative" threat, *Babbitt*, 442 U.S. at 302.

Although "the mere existence of a proscriptive statute" is not enough, *Thomas*, 220 F.3d at 1139, a plaintiff may reasonably fear prosecution even if enforcement authorities have not communicated an explicit warning to the plaintiff. Although a specific threat or warning of prosecution is relevant, "we have never held that a specific threat is necessary to demonstrate standing." *Valle del Sol v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013) (citing *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)). We applied this reasoning in *Tingley.* There, we noted that the relevant authorities "ha[d] not issued a warning or threat of enforcement [to the plaintiff]" but we determined that a combination of other circumstances

amounted to a credible threat of enforcement. *Tingley*, 47 F.4th at 1068.

Intervenors argue that Plaintiffs have not shown a credible threat because the Arizona Attorney General has expressly disavowed enforcement of the Reason Regulations. Intervenors also claim that the Attorney General "will prevent county attorneys from enforcing the statute." Neither of these arguments fatally undermines the credibility of Plaintiffs' fear of prosecution.

As Plaintiffs explain, "the Attorney General is only one of the many enforcers of the Reason Scheme—including the Arizona Department of Health Services, the Arizona Medical Boards, and the County Attorneys." Despite Intervenors' assertion that the Attorney General would "prevent" county attorneys from enforcing the law, the Attorney General in fact stated that she would "*advise* [the county attorneys] that prosecut[ions] [under the Regulations] . . . would violate the Arizona Constitution." *See* Kris Mayes, 12 Point Plan, https://bit.ly/3DEiEHf (emphasis added). The Attorney General evidently believes that she lacks authority to bind county attorneys by her disavowal of enforcement, and Intervenors cite no statutory provisions contradicting that assessment.

There is reason to believe that one or more county attorneys agree that they are not bound by the Attorney General's disavowal and will attempt to enforce the Reason Regulations. The Yavapai County Attorney recently moved to intervene in a case to support an Arizona law banning nearly all abortions. Motion to Intervene, *Planned Parenthood Ariz., Inc. v. Mayes*, No. CV-23-005-PR (Ariz. Mar. 2, 2023). His stated reason for intervention was to "fill the void created by Attorney General Mayes' change of

position [to one of nonenforcement]" and advocate for "[a] lifting of the injunction [of the abortion ban] so that [the county attorney] may fully enforce [it] as it was written." *Id.* That at least one county attorney intends to enforce restrictive abortion laws, even when the Attorney General has disavowed and advised against enforcement, is reason enough for Plaintiffs to fear that they too will be targeted.

There is also a credible threat that the Reason Regulations will be civilly enforced. The Arizona Department of Health Services and the Arizona Medical Board—which have the power to penalize physicians and revoke their licenses—have indicated that they "comply with the laws that are in effect and will continue to do so when regulating allopathic physicians practicing in [Arizona]." Response to Motion to Intervene, *Isaacson v. Mayes*, Case No. 2:21-CV-01417-DLR (Feb. 17, 2023), Dkt. 158; Response to Motion to Intervene, *Isaacson v. Mayes*, Case No. 2:21-CV-01417-DLR (Feb. 17, 2023), Dkt. 161. Although this was a general statement and did not refer expressly to the Reason Regulations, Plaintiffs could reasonably interpret it as a threat to investigate physicians who run afoul of those Regulations. *Cf. Tingley*, 47 F.4th at 1068 (when a state "confirm[s] it will enforce" a challenged law "as it enforces other restrictions," it amounts to a credible threat of enforcement); *LSO*, 205 F.3d at 1155 (government's refusal to disavow enforcement weighs in favor of finding of imminent future injury).

Intervenors' brief is silent on the threat of enforcement by these agencies and likewise silent on the possibility of civil suits brought under the Regulations' private right of action. At oral argument, Intervenors responded to questions on these topics simply by stating that no such civil actions have yet been brought. But the lack of past prosecution does

not preclude Plaintiffs' standing. The Regulations were only recently enacted, and Plaintiffs have adequately alleged that they are over-complying with the law for fear of exposing themselves to liability. Additionally, the Regulations' private right of action—which creates a potential plaintiff each time physicians perform an abortion on a married woman—is enough to create a credible threat of future private enforcement.

The combination of these potential threats—from the county attorneys, the Arizona health agencies, and private parties—satisfies the third prong of *Driehaus* and is sufficient to allege an imminent future injury.

### 4. *Causation and Redressability*

Our causation and redressability analysis regarding Plaintiffs' actual injury applies to their imminent injury as well. As we noted above, even if Plaintiffs' over-compliance with the Reason Regulations contributes to some of their injuries, their over-compliance is itself fairly traceable to the alleged vagueness of the law. Intervenors do not substantively dispute causation or redressability. They argue only that Plaintiffs cannot meet these elements because they have not established a cognizable injury. We hold otherwise, and we also hold that Plaintiffs have satisfied the causation and redressability requirements of standing with respect to their imminent future injury.

## IV. Conclusion

For all of the above reasons, we hold that Plaintiffs have standing to bring their procedural due process claim based on both actual and imminent injuries. We reverse and

remand for the district court to consider Plaintiffs' renewed motion for a preliminary injunction on the merits.[8]

**REVERSED AND REMANDED.**

---

[8] We express no opinion on the merits of Plaintiffs' claims. We conclude only that Plaintiffs have standing to pursue them.